UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---------------------------

No. 24-3006

---------------------------

UNITED STATES OF AMERICA,                                              APPELLEE,

  v.

PETER K. NAVARRO,                                                       APPELLANT.

## PETITION FOR EN BANC REVIEW

On May 10, 2024, a three-judge panel of this Court declined to abandon a prior panel's decision in *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), holding that "willfully" failing to respond to a congressional subpoena, as criminalized by 2 U.S.C. § 192, "means only that the defendant deliberately and intentionally refused to comply with a congressional subpoena." *United States v. Bannon* ("*Bannon I*"), 101 F.4th 16, 18 (D.C. Cir. 2024) (citing *Licavoli*, 294 F.2d at 207). *See also Licavoli*, 294 F.2d at 209 ("Advice of counsel does not immunize . . . a deliberate intention to do the act.").

As here, the defendant in *Bannon I* argued that *Licavoli* was no longer binding precedent on this Court insofar as it is now inconsistent with an earlier, on-point decision, *United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011), or because it has effectively been overturned – its rationale "eviscerated" – by a subsequent decision of the United States Supreme Court or of

1

this court sitting *en banc*. *Dellums v. U.S. Nuclear Regul. Comm'n*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988). In rejecting this rationale, however, the *Bannon I* panel concluded that, "every case that addresses the mental state required for a contempt of Congress conviction firmly supports *Licavoli*'s holding."  *Bannon I*, 101 F.4th at 21.

Specifically, in reaffirming the *Licavoli* panel's holding that, "an advice of counsel defense—which ultimately seeks to show the defendant acted in good faith—is unavailable under this statute," the *Bannon* panel reasoned:

> [E]ffectively enforcing congressional subpoenas would be exceedingly difficult if contempt charges required showing that a failure to appear . . . was not just deliberate and intentional, but also done in bad faith.  Otherwise, any subpoenaed witness could decline to respond and claim they had a good-faith belief that they need not comply, regardless of how idiosyncratic or misguided that belief may be.

*Id.* at 22.  The *Bannon I* panel, however, expressly acknowledged a critical distinction between that matter and the case at bar:

> This case . . . provides no occasion to address any questions regarding the scope of executive privilege or whether it could have excused Bannon's noncompliance in these circumstances.  President Trump did not communicate an intent to the Committee, and Bannon never raised executive privilege as an affirmative defense to the contempt of congress charges in district court.

*Id.* at 23.

2

Here, however the district court concluded Appellant/Defendant Dr. Peter K. Navarro's good faith reliance on an assertion of executive privilege to neglect to comply with the congressional subpoena at issue was also not a defense under *Licavoli* – the first time *Licavoli* had ever been applied to executive privilege. Nevertheless, it stands to reason that any three-judge panel to consider Dr. Navarro's appeal would similarly conclude it was precluded from departing from *Licavoli* because either that panel would agree with the *Bannon I* panel that, "every case that addresses the mental state required for a contempt of Congress conviction firmly supports *Licavoli*'s holding," *id.* at 21, or otherwise conclude it was bound by the *Bannon* panel's decision not to jettison the antiquated or otherwise inapplicable holding of *Licavoli*.

Accordingly, Dr. Navarro respectfully requests that this Court consider his appeal *en banc* in the first instance, so as to permit consideration of whether *Licavoli* applies to prosecutions for contempt of congress that implicate executive privilege, whether the *Licavoli*'s panel's interpretation of the meaning of "willfully" stands, or both.

With respect to executive privilege, different principles than any "good faith" reliance on advice of counsel arise. *See United States v. Bannon* ("*Bannon II*"), No. 22-3086, 2024 U.S. App. LEXIS 15093, at *4 (D.C. Cir. June 20, 2024) ("If an assertion of good-faith reliance on advice of counsel excused a witness's wholesale

3

noncompliance . . . Congress's power of inquiry would be "nulli[fied]." (citing *United States v. Bryan*, 339 U.S. 323, 331 (1950)).  An advice of counsel defense is not presumed and can be waived, whereas executive privilege is presumptive, *see., e.g.*, *United States v. Nixon*, 418 U.S. 683, 708 (1974) (noting a "presumptive privilege for Presidential conversations[,]" because the privilege is, "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution."), and subject to a Constitutional accommodation process. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2029 (2020) ("Historically, disputes over congressional demands for presidential documents have not ended up in court. Instead, they have been hashed out in the 'hurly-burly, the give-and-take of the political process between the legislative and the executive.'" (quoting Hearings on S. 2170 *et al.* before the Subcommittee on Intergovernmental Relations of the Senate Committee on Government Operations, 94th Cong., 1st Sess., 87 (1975) (A. Scalia, Assistant Attorney General, Office of Legal Counsel)); *United States v. Am. Tel. & Tel. Co. ("AT&T")*, 567 F.2d 121, 127 (D.C. Cir. 1977) ("Rather, each branch should take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation. This aspect of our constitutional scheme avoids the mischief of polarization of disputes.").  The accommodation mandate avoids any concern that "wholesale noncompliance" would be excused based on a

good faith reliance on the applicability of executive privilege because resolution of the interbranch dispute would give rise to an assumption that, "it is substantially likely that the President and other executive . . . officials would abide by an authoritative interpretation of [a] . . . constitutional provision by the District Court, even though they would not be directly bound by such a determination." *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992).

With respect to the *Licavoli* panel's holding that any defense of "good faith" reliance on an assertion of executive privilege is barred, such a conclusion is in conflict with the plain text of § 192. It is beyond dispute that § 192 precludes two separate types of conduct: (a) "willfully mak[ing] default," and (b) "refus[ing] to answer [a pertinent] question" after, "having appeared." 2 U.S.C. § 192. The first of the proscribed conduct specifically requires be "willful" as an element of the offense. While the *Licavoli* panel concluded that "willful" must necessarily mean "deliberate[] and intentional[]," citing the Supreme Court's holding in *Sinclair v. United States*, 279 U.S. 263, 299 (1929) (*overruled on other grounds by United States v. Guadin*, 515 U.S. 506 (1995)), which provided that the refusal to answer a question requires proof only of an, "[i]ntentional violation," and that, "act[ing] in good faith on the advice of competent counsel" is "no defense," such a conclusion is in conflict with the "general rule" that "willfully" requires proof of "bad purpose," or, "knowledge that . . . conduct was unlawful." *Bryan v. United States*, 524 U.S.

5

184, 191-92 (1998)). *See also Bannon II*, 2024 U.S. App. LEXIS 15093, at *5-6 ("[S]ubsequent Supreme Court decisions arguably establish 'a "general" rule' in some tension with this circuit's earlier decision in *Licavoli*." (citing *Bannon I*, 101 F. 4th at 22)) (Walker, J., dissenting).

Moreover, the implication of executive privilege, and the Constitutional accommodation process that must follow, presents a wholly different posture within which to consider the elements of the first clause of § 192. As the Supreme Court explained in *Watkins v. United States*, 354 U.S. 178 (1957):

> The [implication of due process protections] attains proportion when viewed from the standpoint of the witness who appears before a congressional committee. He must decide at the time the questions are propounded whether or not to answer. As the Court said in *Sinclair*, the witness acts at his peril. He is '. . . bound rightly to construe the statute.' An erroneous determination on his part, even if made in the utmost good faith, does not exculpate him if the court should later rule that the questions were pertinent to the question under inquiry.

*Id.* at 208 (citing *Sinclair*, 279 U.S. at 299), *cited in Licavoli*, 294 F.2d at 207 n.2. A senior presidential advisor is duty-bound to assert executive privilege and as a result, is otherwise immune from prosecution. *See Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 213 n.34 (D.D.C. 2019) (the identification of "sensitive information" "deem[ed] subject to the executive privilege," "gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf"); *Id.* at 213-14 ("such officials (including senior-level presidential aides) still enjoy

6

the full measure of freedom that the Constitution affords[]"). Accordingly, a senior presidential advisor's appearance in response to a congressional subpoena reasonably presumes completion of the constitutionally mandated accommodation process. *See Franklin*, 505 U.S. at 803 (holding that, "it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of [a]. . . statute and constitutional provision by the District Court, even though they would not be directly bound by such a determination.").

\* \* \*

Dr. Navarro is the *only* senior presidential advisor ever to have been prosecuted, let alone convicted, for contempt of congress. A series of errors permitted this unjust result. In his principal brief, Dr. Navarro submits this Court must hold that senior presidential advisors are immune from prosecution for contempt of congress insofar as the congressional inquiry giving rise to such a prosecution implicates executive privilege. Failure to reverse Dr. Navarro's conviction will forever cripple the critical role executive privilege plays in effective presidential decisionmaking; significantly erode the longstanding separation of powers between our coordinate branches; eliminate the necessity of accommodation in interbranch disputes; and enable the constitutional congressional prerogative to serve as a partisan sword without the protective shield our framers intended for the

Chief Executive. Relevant here, this Court should not itself be hamstrung by the prior decision in the three-judge *Licavoli* panel, in which the application executive privilege in the context of a prosecution of a senior presidential advisor for contempt of congress plainly vitiates the separation of powers doctrine.

## CONCLUSION

For the foregoing reasons, Dr. Navarro respectfully requests this Court grant *en banc* review of his appeal of his convictions for contempt of congress.

Dated: July 11, 2024            Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Stanley E. Woodward, Jr.*
　　　　　　　　　　　　　　Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
　　　　　　　　　　　　　　Brand Woodward Law, LP
　　　　　　　　　　　　　　400 Fifth Street, Northwest, Suite 350
　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　202-996-7447 (telephone)
　　　　　　　　　　　　　　202-996-0113 (facsimile)
　　　　　　　　　　　　　　stanley@brandwoodwardlaw.com

　　　　　　　　　　　　　　*Counsel for Defendant/Appellant Dr. Peter K. Navarro*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 27(d)(2)(A) that the foregoing motion complies with the type-volume limitation because it contains 1,687 words and therefore, not more than 3,900 words. I further certify that this motion, pursuant to Fed. R. App. P. 27(d)(1)(E) complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

/s/
Stanley E. Woodward Jr.

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on July 11, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/
Stanley E. Woodward Jr.