ORAL ARGUMENT NOT YET SCHEDULED

APPEAL NO. 24-3006

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

UNITED STATES OF AMERICA,                        APPELLEE

v.

PETER K. NAVARRO,                               APPELLANT.

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

APPELLANT DR. PETER K. NAVARRO'S REPLY BRIEF (CORRECTED)

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
Brand Woodward Law, LP
400 Fifth Street, Northwest,
Suite 350
Washington, DC 20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
stanley@brandwoodwardlaw.com

John P. Rowley, III
(D.C. Bar No. 392629)
SECIL Law PLLC
1701 Pennsylvania Avenue, Northwest,
Suite 200
Washington, DC 20006
703-417-8652 (telephone)
jrowley@secillaw.com

John S. Irving
(D.C. Bar No. 460068)
E&W LAW, LLC
1455 Pennsylvania Avenue, Northwest,
Suite 400
Washington, DC 20004
301-807-5670 (telephone)
John.Irving@earthandwatergroup.com

*Counsel for Appellant-Defendant
Dr. Peter K. Navarro*

## TABLE OF CONTENTS

Table of Contents ...................................................................................................2

Table of Authorities ...............................................................................................3

Summary of the Argument......................................................................................4

Argument................................................................................................................5

Conclusion ............................................................................................................15

Certificate of Compliance .....................................................................................16

Certificate of Service ............................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008)......................9
*Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975).......................14
*In re Sealed Case (Espy)*, 121 F.3d 729 (D.C. Cir. 1997)...........................................5
*Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961) .......................................15
*Marbury v. Madison*, 5 U.S. 1 (Cranch) 137 (1803).....................................................9
*Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) ..........................5
*Nixon v. Fitzgerald*, 437 U.S. 731 (1982)................................................................13
*Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973)........................................................7
*Tobin v. United States*, 306 F.2d 270 (D.C. Cir. 1962) ...........................................10
*United States v. Arizona*, 641 F.3d 339 (9th Cir. 2011) .........................................10
*United States v. Bannon*, 101 F.4th 16 (D.C. Cir. 2024).................................. 14, 15
*United States v. Project on Gov't Oversight*, 616 F.3d 544 (D.C. Cir. 2010) ..........10

**Statutes**

2 U.S.C. § 192................................................................................................15

**Other Authorities**

*Assertion of Executive Privilege in Response to a Congressional Subpoena*, 5 Op. O.L.C. 27 (1981) (Smith, Att'y Gen.) ...............................................................8
*Congressional Oversight of the White House*, 45 Op. O.L.C., _ (Jan. 8, 2023)..8, 10
Letter from the Department of Justice to the Honorable Mike Johnson (June 14, 2024)......................................................................................................10
Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel (July 29, 1982)……………………………………………………………………….9, 11

## SUMMARY OF THE ARGUMENT

Fundamental doctrines of separation of power require that the conviction of Appellant Dr. Peter K. Navarro be vacated. Executive privilege is presumptive, and a former President can assert executive privilege over matters relating to the former President's tenure in the White House.

There is a Constitutional mandate that the legislative branch engage in the accommodation process when a congressional subpoena implicates the executive branch. When Dr. Navarro informed congressional representatives that former President Trump had instructed Dr. Navarro not to comply with a subpoena based on executive privilege, Congress made no effort to engage in the accommodation process in pursuing the information sought. The accommodation process would have obviated any need to pursue contempt of congress charges, and as reflected in the Department of Justice's Office of Legal Counsel opinions, the executive branch has long held that Congress cannot pursue contempt of congress charges where it fails to engage in the accommodation process when a senior presidential advisor raises a good-faith objection to a congressional subpoena.

The district court's novel three-pronged test dictating how a former president must assert executive privilege is erroneous, as executive privilege is presumptive. However, even if this Court accepts the district court's novel three-part criteria, Dr. Navarro satisfied each prong.

## ARGUMENT

In striking indifference to important separation of powers prerogatives,[1] the Department of Justice attempts to rewrite the doctrine of executive privilege to justify the wrongful incarceration of Dr. Peter K. Navarro, one of former President Trump's longest-serving advisors. Specifically, and for the first time, the government contends only an incumbent President may assert executive privilege and because President Biden did not here, "the Executive Branch did not oppose the

---

[1] The proper function of executive privilege is, "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974) (*quoted in Trump v. United States*, No. 23-939, 2024 U.S. LEXIS 2886, at *33-34 (July 1, 2024)). The privilege flows from the vesting of all executive power in a single President and, "derives from the supremacy of the Executive Branch within its assigned area of constitutional responsibilities." *Nixon v. Administrator of General Services*, 433 U.S. 425, 447 (1977) (hereinafter "*GSA*"). Both the Constitution and common law recognize a need to keep confidential executive communications and deliberations to allow the "fulfillment of the unique role and responsibilities of the executive branch of our government." *In re Sealed Case (Espy)*, 121 F.3d 729, 736 (D.C. Cir. 1997). Citing to *GSA*, the amici claim that only, "the *information* protected by the presidential communications continues to be protected beyond the induvial President's tenure[,]" and that *GSA* placed on any privilege assertion of a former President, "an implicit caveat: the information can still be protected by someone with the authority to do so. In other words, it can be protected–or waived –by the lawful head of the Executive Branch, and nobody else." Brief for *Amici Curiae* Heidi Kitrosser, Mark J. Rozell, and Mitchel A. Sollenberger in Support of Affirmance, at 33 (Sep. 20, 2024) (Document # 2076401) (emphasis in original) (hereinafter "Amici Brief"). The amici, however, fail to address that *GSA* explicitly rejects the assertion that only the incumbent can assert or waive executive privilege. *GSA*, 433 U.S. at 439 ("We reject the argument that only an incumbent president may assert [separation of powers or executive privilege claims] and hold that appellant, as a former President, may also be heard to assert them.").

5

subpoena to [Dr.] Navarro" meaning, therefore, [t]here was no interbranch conflict; this was a dispute between a congressional committee and a private citizen . . . ." Brief for Appellee United States of America, at 51 (Sep. 12, 2024) (Document #2074490) (hereinafter "Appellee Brief").

To the contrary, it is beyond dispute that, "[a] former President must be able to successfully invoke the Presidential communications privilege for communications that occurred during his Presidency, even if the current President does not support the privilege claim." *Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (Kavanaugh, J., respecting denial of application for stay). *See also Nixon v. Administrator of General Services*, 433 U.S. 425, 448-49 (1977) ("Unless [a President] can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective discharge of his duties depend. The confidentiality necessary to this exchange cannot be measured by the few months or years between the submission of the information and the end of the President's tenure; the privilege is not for the benefit of the President as an individual, but for the benefit of the Republic. Therefore the privilege survives the individual President's tenure."). Neither can an incumbent President override the privilege assertion of a former President. As Justice Kavanaugh opined:

> If Presidents and their advisers thought that the privilege's protections would terminate at the end of the Presidency and that

>their privileged communications could be disclosed when the President left office (or were subject to the absolute control of a subsequent President who could be a political opponent of a former President), the consequences for the Presidency would be severe. Without sufficient assurances of *continuing* confidentiality, Presidents and their advisers would be chilled from engaging in the full and frank deliberations upon which effective discharge of the President's duties depends.

*Trump*, 142 S. Ct. at 681. The government conceded as much before the district court here. *See e.g.*, App., p. 824 ("The [executive] privilege may be asserted by both current and former Presidents to withhold communications 'made in the process of arriving at *presidential* decisions.'" (emphasis in original)).

Nor does the fact that the executive privilege belongs to a former president obviate the separation of powers concerns implicated by piercing the same. This Court previously has grappled with conflicts, "between independent organs of the federal government." *See Nixon v. Sirica*, 487 F.2d 700, 715 (D.C. Cir. 1973) ("That the privilege is being asserted by the President against a grand jury does not make the task of resolving the conflicting claims any less judicial in nature. Throughout our history, there have frequently been conflicts between independent organs of the federal government, as well as between the state and federal governments. When such conflicts arise in justiciable cases, our constitutional system provides a means for resolving them – one Supreme Court."). Accordingly, the intersection of the constitutional necessity of executive privilege and the congressional prerogative to investigate gives rise to an accommodation process that requires, "each branch . . .

7

take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation." *United States v. Am. Tel. & Tel. Co.* ("*AT&T*")*, 567 F.2d 121, 127 (D.C. Cir. 1977). *See also Assertion of Executive Privilege in Response to a Congressional Subpoena*, 5 Op. O.L.C. 27, 31 (1981) (Smith, Att'y Gen.) ("The accommodation required is not simply an exchange of concessions or a test of political strength. It is an obligation of each branch to make a principled effort to acknowledge, and if possible to meet, the legitimate needs of the other branch."); *Congressional Oversight of the White House*, 45 Op. O.L.C., _ at *56 (Jan. 8, 2021) (slip opinion) ("Engel Mem.") ("A congressional committee may not avoid its obligation to participate in this constitutionally mandated process by issuing or seeking to enforce a subpoena *before* the accommodation process has run it course." (emphasis added)).[2]

---

[2] For the government to assert that Congress engaged in the accommodation process defies credulity. *See* Appellee Brief, at 52 ("Navarro also claims, inaccurately, that 'literally no accommodation was attempted' by the Committee . . . [t]he Committee did seek to accommodate any legitimate executive privilege concerns. . . [i]t was Navarro who refused any accommodation[.]"). It was not for Dr. Navarro himself to negotiate that process and neither is encouraging him, with or without counsel (although he was not then represented by counsel) to navigate a privilege assertion without the input of the privilege stakeholder – the former President. The "accommodation" process proposed by the congressional committee and apparently endorsed by the Biden Justice Department would involve a Member of Congress – the committee's chair – determining whether an assertion of privilege was valid. Put differently, Congress, let alone any individual Member, cannot determine whether

Importantly, accommodation resolves the necessity of a prosecution for contempt of congress. Once the Judiciary has resolved any dispute, *see AT&T*, 567 F.2d at 126 n. 13 ("[D]isputes concerning the allocation of power between the branches have often been judicially resolved"); *see also Trump v. Mazars USA, LLP*, 140 S.Ct. 2019, 2031 (2020) ("Congressional subpoenas for information from the President, however, implicate special concerns regarding the separation of powers. The courts below did not take adequate account of those concerns. . . and the cases are remanded for further proceedings consistent with this opinion."), "[w]e may assume it is substantially likely that the President and other executive . . . officials would abide by an authoritative interpretation of [a] . . . constitutional provision by the District Court, even though they would not be directly bound by such a determination." *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992).

---

executive privilege trumps a Congressional prerogative. Specifically, the Supreme Court has recognized: "it is the province and duty of this Court 'to say what the law is' with respect to the claim of [executive] privilege.'" *Nixon*, 418 U.S. at 705 (quoting *Marbury v. Madison*, 5 U.S. 1 (Cranch) 137, 177 (1803)). To the contrary, an important feature of the accommodation process is the dialogue that takes place between coordinate branches to ensure that information requests are not, "unnecessarily broad." *Cheney v. United States Dist. Court*, 542 U.S. 367, 390 (2004). Only the judiciary can resolve disputes as to the exercise of authority by the other coordinate branches. As a court in this District observed, following a disputed assertion of executive privilege: "'Congress [can] obtain a judicial resolution of the underlying privilege claim and vindicate its asserted right to obtain any documents by a civil action for enforcement of a congressional subpoena.'" *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 75-76 (D.D.C. 2008) (quoting Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 137, 142 (July 29, 1982)).

9

Accordingly, "[w]here a committee declines to honor its obligation to accommodate the legitimate needs of the White House, the committee may not lawfully begin the contempt process based upon good faith objections raised by White House officials." Engel Mem. at 57.³ This outcome tracks logically insofar as to hold otherwise would force senior presidential advisors to risk imprisonment or betray their duty to their President. *See Tobin v. United States*, 306 F.2d 270, 276 (D.C. Cir. 1962) ("Especially where the contest is between different governmental units, the representative of one unit in conflict with another should not have to risk jail to vindicate his constituency's rights."). The Department of Justice has long

---

³ The amici advocate for an extreme treatment of OLC opinions, referring to them as "meaningless," "unworthy of any degree of deference from this Court," and "only precedential until a new AAG-OLC decides to change them." *Amici* Brief, at 35-37. First, the claim that OLC. memos are treated as "meaningless" is not recognized by the Courts, as OLC opinions are treated as binding on the Executive Branch and are given considerable persuasive weight by the judiciary in matters concerning the Executive Branch. *See e.g. United States v. Project on Gov't Oversight*, 616 F.3d 544, 551 (D.C. Cir. 2010) ("We agree with the government that we are not required to defer to the views of the Justice Department's Office of Legal Counsel. . . [b]ut nothing bars us from regarding OLC's views as more persuasive than those expressed in the Department's appellate brief."). *See also United States v. Arizona*, 641 F.3d 339, 385 (9th Cir. 2011) (Bea, J., concurring) (noting that OLC opinions, "reflect. . . the legal position of the executive branch [and] provid[e] binding interpretive guidance for executive agencies."), *aff'd in part, rev'd in part*, 567 U.S. 387 (2012). Second, as noted in the Appellant's Principal Brief, the current AAG-OLC has endorsed the OLC opinions upon which Dr. Navarro relied. Letter from the Department of Justice to the Honorable Mike Johnson (June 14, 2024) ("The longstanding position of the Department is that we will not prosecute an official for contempt of Congress for declining to provide subpoenaed information subject to a presidential assertion of executive privilege[.]"). Therefore, in the amici's own words, the OLC opinions within the Appellant brief remain precedential.

10

agreed with this principal: "We believe that the courts, if presented the issue in a context similar to that discussed in this memorandum, *would surely conclude* that a criminal prosecution for the exercise of a presumptively valid, constitutionally based privilege *is not consistent with the Constitution.*" Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, at 141 (July 29, 1982) (emphasis added).

Rather than address these core constitutional questions, nearly the entirety of the government's response brief obfuscates these issues. The government writes that Dr. Navarro, "conflates" concepts of executive privilege and testimonial immunity, blithely asserting these are, "distinct" concepts. Yet, no federal court has actually recognized absolute testimonial immunity. Instead, any actual immunity arises from the unconstitutionality of a prosecution of a senior presidential advisor for contempt of congress. Put simply, the question of what executive privilege means – including the effect of its application on an interbranch conflict – is one only definitively resolved by the judicial branch.

Nor is the government or the amici persuasive in asserting that executive privilege is irrelevant insofar as the district court concluded Dr. Navarro could not satisfy the district court's own novel construction of the manner in which executive privilege must be asserted. Without question, the privilege is presumptive. As the Supreme Court held: "Because the President's 'need for complete candor and

11

objectivity from advisers calls for great deference from the courts,' we held that a 'presumptive privilege' protects Presidential communications." *Trump*, 2024 U.S. LEXIS 2886, at *33-34 (quoting *Nixon*, 418 U.S. at 706, 708)). *See also Dellums v. Powell*,, 561 F.2d 242, 246 (D.C. Cir. 1977) ("An advisor to the President has no guarantee of confidentiality. His advice may be disclosed by the President or a successor. As to disclosure by a court, the need for confidentiality is in large measure secured and protected by the relatively infrequent occasions when an assertion of the privilege may be overcome. *And so it is, and should be, that the 'presumptive' privilege embodies a strong presumption, and not merely a lip-service reference.*" (emphasis added)). Accordingly, as already articulated, the mere implication of executive privilege necessarily gives rise to a constitutional accommodation process the absence of which, barred the prosecution of Dr. Navarro.

Even were an assertion and/or invocation of executive privilege by Dr. Navarro necessary, it is beyond dispute that Dr. Navarro in fact raised the privilege as a bar to his compulsory compliance with a congressional subpoena. Dr. Navarro testified:

> And during the course of that conversation [with former President Trump], I got the very clear message from the President that I would not talk to these people, meaning these Congressional Committees, these partisan Congressional Committees, or provide them documents. And that included anything I might receive from the J6 Committee, because . . . [a]t that point, I was one of the few people they hadn't yet gone

12

>         after. . . .    There was no doubt in my mind or the President's
>         mind that I would be next on that list at one point.

App. p. 1061. To "properly" invoke executive privilege, the district court held, for the first time ever, that the following three-part criteria must be met – first, that the privilege be claimed or invoked by the President *or* someone authorized and designated to make such a claim or invocation; second, that that claim or invocation be made after personal consideration by the President or his authorized designee; and lastly, through "an act of affirmative conduct," to be distinguished from "mere acquiescence."[4] *See* App., p. 1175. All three prongs were satisfied here with Dr.

---

[4] Relevant here, the proper function of executive privilege is, "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *Nixon*, 418 U.S. at 708, *quoted in Trump v. United States*, No. 23-939, 2024 U.S. LEXIS 2886, at *33-34. Accordingly, it was improper for the district court to delineate, *post hoc*, the means by which some "proper" invocation and/or assertion of executive privilege was to be made. Similarly instructive, is the Supreme Court, analogization of presidential privilege to the speech or debate immunity which protects members of Congress from intimidation by the Executive or accountability before a hostile Judiciary. Although speech or debate immunity is textually based, *see Nixon v. Fitzgerald*, 437 U.S. 731, 750 n.31 (1982) ("Noting that the Speech and Debate Clause provides a textual basis for congressional immunity, respondent argues that the Framers must be assumed to have rejected any similar grant of executive immunity. This argument is unpersuasive. First, a specific textual basis has not been considered a prerequisite to the recognition of immunity."), while executive privilege is not, the latter has nevertheless long been considered constitutionally derived. *Nixon*, 418 U.S. at 705 ("Whatever the nature of the privilege of confidentiality of Presidential communications in the exercise of Art. II powers, the privilege can be said to derive from the supremacy of each branch within its own assigned area of constitutional duties. Certain powers and privileges flow from the nature of enumerated powers; the protection of the confidentiality of Presidential communications has similar constitutional underpinnings."). Relevant

Navarro reasonably understanding he was to assert executive privilege, *Id*. at 1076 ("A [Dr. Navarro]: And during that call, it was very clear that the privilege was invoked, very clear."); and neither former President Trump nor any of his aides advised Dr. Navarro that he had failed to properly carry out that mandate. *See e.g., id.* at 1080 ("A [Dr. Navarro]: The privilege was never questioned. The only correspondence I had on several occasions from Mr. George was an acknowledgement that the privilege had been invoked."). *See also United States v. Bannon*, 101 F.4th 16, 20 (D.C. Cir. 2024) ("[O]n October 16, after learning of Bannon's continued claim to the Committee that he was justified in not responding to the subpoena, [former President Trump's lawyer] Clark repeated that his previous letter 'didn't indicate that we believe there is immunity from testimony for your client. As I indicated the other day, we don't believe there is.'"). Thus, even were

---

here, under the speech or debate clause, there is no specific judicial requirement that its assertion be framed in any particular way. Indeed, its applicability is almost automatic – presumptive – if the activity subject to it is part of the "legitimate legislative sphere" or involves conduct typically performed by Members in relation to the functions which the Constitution assigns to the Legislature. *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 509 n.16 (1975) ("Where we are presented with an attempt to interfere with an ongoing activity by Congress, and that activity is found to be within the legitimate legislative sphere, balancing plays no part. The speech or debate protection provides an absolute immunity from judicial interference.").

14

some formal assertion and/or invocation necessary, any necessary threshold for such an assertion and/or invocation was actually met here.[5]

## CONCLUSION

For the foregoing reasons, Dr. Navarro respectfully requests this Court reverse his convictions for contempt of congress.

---

[5] This Court ultimately decided that *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961) is binding precedent in this Circuit. *See generally United States v. Bannon*, 101 F.4th 16 (D.C. Cir. 2024). As noted in the Appellant Brief, *Licavoli* is likely distinguishable for Dr. Navarro, as the Circuit noted that, "*Licavoli* specifically held that an advice of counsel defense—which ultimately seeks to show the defendant acted in good faith—is unavailable under [2 U.S.C. § 192]." *Bannon*, 101 F.4th at 21 (citing *Licavoli*, 294 F.2d at 209). *See* Appellant Brief, at 44 ("[T]he implication of executive privilege implicates different principals than any 'good faith' reliance on advice of counsel. . . [a]n advice of counsel defense is not presumed and can be waived, whereas executive privilege is presumptive. . . and subject to a Constitutional accommodation process." (citations omitted)).

15

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 32(a)(7)(B), that the foregoing brief complies with the page and type-volume limitation because it contains 4,843 words, and thus not more than 6,500 words, excluding those exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

/s/
Stanley E. Woodward Jr.

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on October 17, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/

Stanley E. Woodward Jr.