UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 24-3006

———————————

UNITED STATES OF AMERICA                            Appellee,

    v.

PETER NAVARRO                                      Appellant.

APPELLANT'S OPPOSITION TO MOTION
OF THE DEPARTMENT OF JUSTICE
TO STRIKE BRIEF AND APPOINT *AMICUS CURIAE*

    The Department of Justice seeks to strike its own merits brief and appoint an *amicus curiae* despite having prosecuted Appellant in the district court and defended that conviction in this Court. Yet, it offers no reasons for this abrupt reversal other than it "has determined that it is no longer taking the same position as the prior administration in this case."

## **ISSUES PRESENTED**

    This case has extraordinary constitutional implications—particularly regarding the separation of powers and whether senior White House advisers can be criminally prosecuted for resisting

1

congressional subpoenas. The Department of Justice should not be allowed to disavow, without explanation or acknowledgment of its reasons, the positions it has pursued in this case for more than three years. Significantly, it is not asking this Court to appoint an *amicus* to review a discrete legal issue (*cf., United States v. Thorpe,* __ F. 4th__, 2025 WL 2446004 (D.C. Cir, Aug. 26, 2025) (*amicus* appointed to advise the Court regarding the parameters of Rule 48(a), Fed. R. Crim. P.)). Instead, it has affirmatively disavowed its legal arguments with the intention of passing off its responsibilities to a private litigant – while ducking its obligation to say why.

Notably, the appellant was ordered to surrender and served a four-month prison sentence, while this appeal was pending, based on the Department's representations to both the district court and this Court that there were no issues warranting the stay of sentencing. Its abrupt reversal at this late date raises serious concerns about due process and the fairness expected of the agency responsible for the Executive's position on important constitutional issues.

This is not the Department's first about-face in its prosecution of Appellant. It comes on the heels of its abandonment of more than fifty

years of consistent Office of Legal Counsel opinions—issued across administrations of both parties—which concluded that senior presidential advisers cannot be prosecuted for contempt of Congress without infringing upon the President's constitutional prerogatives. Permitting the Department to now walk away from this appeal creates uncertainty about when current and former White House advisers may face prosecution, and risks destabilizing well-established principles of separation-of-powers. It is therefore incumbent upon the Department to at least provide a particularized explanation of its current position.[1]

Rule 27 of the Federal Rules of Appellate Procedure requires that motions state their grounds "with particularity." Fed. R. App. P. 27(a)(2)(A). The Department's motion does not meet this standard

---

[1] *See, e.g.,* Memorandum from William H. Rehnquist, Assistant Att'y Gen., Office of Legal Counsel, *Power of Congressional Committee to Compel Appearance or Testimony of President's Chief of Staff* (Feb. 5, 1971); 8 Op. O.L.C. 101 (1984); OLC, *Assertion of Executive Privilege and Immunity for Counsel to the President* (2007); OLC, *Testimonial Immunity of the Former Counsel to the President* (2019). While some courts have questioned the doctrine of "absolute immunity" for senior advisers, see *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008); *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148 (D.D.C. 2019), the Department itself has consistently maintained that prosecution of such advisers would intrude upon the President's constitutional prerogatives.

3

because it offers no explanation for its abrupt change of position. Beyond the requirements of the procedural rule, the Department occupies a unique role when appearing before the federal judiciary. It appears not as a private litigant but as the sovereign, with a heightened obligation to ensure that justice is done. *Berger v. United States,* 295 U.S. 78, 88 (1935).

When the Executive Branch abandons the positions it has aggressively advanced, the interests of candor, transparency, and fairness demand that it explain why. Without such an explanation, the Court and the Appellant are left to speculate whether the decision rests on principled legal grounds or on other, less appropriate, considerations.

Accordingly, the Department's motion should be denied unless and until it provides a full and particularized explanation of its current position concerning the scope of Executive Privilege with respect to congressional subpoenas, and its reasons for seeking to strike the brief it filed with this Court on September 12, 2024.

# ARGUMENT

## I. THE DEPARTMENT HAS AN OBLIGATION TO EXPLAIN THE ATTEMPT TO DISTANCE ITSELF FROM POSITIONS HELD AT TRIAL AND IN THIS COURT

### A. Rule 27 Requires That Motions State Their Grounds with Particularity

The Federal Rules of Appellate Procedure leave no doubt: "[a] motion must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it." Fed. R. App. P. 27(a)(2)(A). In the present case, the motion to strike a merits brief is no ordinary procedural request; it seeks to erase from the record the Department's considered – and aggressively pursued – position on issues of constitutional and statutory law. Granting such relief without explanation would contradict the letter and spirit of Rule 27.

Appellate courts routinely deny motions that fail to articulate adequate grounds. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) (noting the court saw no reason to "abandon the well settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived); *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39

(D.C. Cir. 1997) (the court declined to resolve an issue raised by the District of Columbia because it was raised in "such a cursory fashion"); *Railway Labor Executives' Ass'n v. United States R.R. Retirement Bd.*, 749 F.2d 856, 859 n. 6 (D.C. Cir. 1984) (declining to resolve issue "on the basis of briefing which consisted of . . . no discussion of the relevant statutory text, legislative history, or relevant case law."). The Department, which holds itself to a higher standard of candor, is not exempt from this requirement.

### B. The Department Owes a Heightened Duty of Candor and Transparency

Federal prosecutors who represent the Department of Justice have a "special 'duty to seek justice, not merely to convict'" *Connick v. Thompson*, 563 U.S. 51, 65-66 (quoting LSBA, Articles of Incorporation, *Art. 16, EC 7-13* (1971); ABA Standards of Criminal Justice 3-1.1(c) (2d ed. 1980)). That duty carries through the appellate process. *See Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 803 (1987) (government must act as a "disinterested prosecutor" representing the public interest).

To abandon a brief without explanation undermines this special responsibility. It deprives both the Court and the Appellant of the ability

6

to assess whether the change in position stems from reconsideration of the legal issues or factors that are extraneous to the merits. Transparency is not optional when the sovereign alters course in a criminal appeal, especially when it ignores its own relentless efforts to prosecute Appellant.

That is particularly so where the Department reverses course after decades of consistent, considered opinions of the Office of Legal Counsel issued across administrations of both parties which concluded that senior presidential advisers are immune from prosecution for contempt of Congress.

### C. Supreme Court Practice Confirms that the Department Must Provide Compelling Reasons When it Abandons its Position on Legal Issues

When the Department abandons a position in high-profile litigation, it has always explained its reasons. In *INS v. Chadha,* 462 U.S. 919 (1983), the Court was informed that the Immigration and Naturalization Service, a part of the Executive Branch until its functions were absorbed by the Department of Homeland Security in 2003, had concluded the legislative veto provision was unconstitutional. In *United States v. Windsor,* 570 U.S. 744 (2013), the Attorney General explained

7

to the House of Representatives that the Department of Justice would no longer defend the constitutionality of Section 3 of the Defense of Marriage Act because it had determined that it violated equal protection.

In both cases, the Court preserved adversarial presentation by appointing *amicus curiae*—but did so only after the Department had provided a clear explanation for its changes of position. This "reason-giving" is essential to maintaining Article III's adversarial framework when the Department departs from its prior defense of a law or judgment.

### D.  Due Process Requires an Acceptable Explanation

Appellant has litigated this case with the expectation that the Department would continue to defend the conviction it secured, as well as the positions it has taken in support of that conviction—positions that represent a sharp break from more than fifty years of consistent Office of Legal Counsel opinions across administrations of both parties.

The Department's abrupt withdrawal now deprives the Court of transparency about the Department's current view concerning the landmark constitutional issues presented, undermines the fairness of the process, and burdens the defense with uncertainty about the scope and posture of the appeal.

Courts have cautioned against surprise shifts in position that prejudice litigants. *See, e.g., Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (agencies must provide fair notice before altering interpretive positions); *Benavides v. DEA*, 976 F.2d 751, 753 (D.C. Cir. 1992) ("We hasten to add that we do not countenance the belated assertion of its final position by the United States. . . . This Court . . . generally refuses to entertain arguments raised for the first time in an appellant's reply brief.") (internal quotations omitted); *McBride v. Merrill Dow & Pharm., Inc.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986) ("We generally will not entertain arguments omitted from an [appellee's] opening brief[.]"); *United States v. West*, 392 F.3d 450, 459 (D.C. Cir. 2004) ("Ordinarily, we 'refuse to disturb judgments on the basis of claims not adequately briefed on appeal.'") (quoting *McBride*, 800 F.2d at 1210). The same principle applies here. The Department should not be permitted to discard its brief without first providing this Court with a reasoned explanation of its decision.

## II. ANY APPOINTMENT OF AN *AMICUS* SHOULD BE CONDITIONED ON THE DEPARTMENT'S REASONS FOR ITS MOTION TO STRIKE ITS BRIEF

The Department has chosen not to defend the conviction, and the case stands on the Appellant's challenge alone. To conscript an *amicus curiae* as a substitute prosecutor would impermissibly manufacture adversity, intrude on executive discretion, and unfairly burden the defendant—particularly without requiring the Department to clearly articulate its reasons about the important issues presented in this case.

Unlike in *Windsor* or *Chadha*, where institutional actors sought to defend statutes, the consequence of appointing an *amicus* here would be to allow the Department to avoid defending a criminal conviction without the Court, the Appellant, or even any appointed *amicus* knowing why. That lack of transparency contravenes Article III and the due process owed to Appellant.

Article III requires an actual "case[]" or "controvers[y]." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Once the Department withdraws its defense, the case no longer benefits from the adversarial presentation that Article III contemplates. To appoint an *amicus* solely to relieve the

10

Department of its responsibilities, and thereby manufacture adversity, would create the very kind of artificial controversy Article III forbids.

The Constitution vests prosecutorial discretion exclusively in the Executive Branch. *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"). That discretion extends to the decision not to defend a conviction on appeal. But when the Department reverses (*i.e.,* "no longer taking") the position it has long and vigorously advanced, Article III and principles of fairness require more than silence.

At a minimum, the Department has an obligation to clearly articulate its reasons so that this Court can address the issues with full understanding and transparency. The unexplained differences with the "prior administration" do not satisfy that obligation. Only with such reason-giving can the Court properly adjudicate, and ultimately resolve, the landmark constitutional questions about the separation of powers this case presents.

## CONCLUSION

For these reasons, the Court should deny the Department's motion to strike its brief unless and until it provides a full and particularized

11

statement of its reasons for abandoning its previously held position. If the Court nevertheless grants the motion, it should first require the Department to set forth those reasons on the record before considering whether to appoint an *amicus* curiae as substitute counsel for the Department.

                          Respectfully submitted,

                          _/s/_____
                          Stanley M. Brand
                          (D.C. Bar No. 213082)
                          3 Pebble Ridge Court
                          Rockville, Maryland 20854
                          202-258-6597
                          stanleymbrand@gmail.com

                          _/s/_____
                          John P. Rowley III
                          (D.C. Bar No. 392629)
                          SECIL Law PLLC
                          1701 Pennsylvania Avenue, NW
                          Suite 200
                          Washington, D.C. 20006
                          202-642-0679
                          jrowley@secillaw.com

                          __/s/_____
                          John S. Irving
                          (D.C. Bar No. 460068)
                          E&W LAW, LLC
                          1455 Pennsylvania Avenue, NW

Suite 400
Washington, D.C. 20004
301-807-5670
john.irving@earthandwatergroup.com

*Counsel for Appellant Peter K. Navarro*

### CERTIFICATE OF COMPLIANCE WITH RULES 32(G) AND 27(D)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this Appellant's Opposition to Motion of the Department of Justice to Strike Brief and Appoint *Amicus Curiae* contains 2,253 words, and therefore complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This Opposition has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/ _____
JOHN P. ROWLEY III
Counsel for Appellant

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Opposition to be served by electronic means, through the Court's CM/ECF system, upon counsel for Appellee United States of America, Mark Hobel, Assistant United States Attorney, mark.hobel@usdoj.gov, on this 7th day of September, 2025.

/s/ _____
JOHN P. ROWLEY III
Counsel for Appellant