ARGUMENT NOT YET SCHEDULED

APPEAL NO. 24-3006

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,              APPELLEE

v.

PETER K. NAVARRO,              APPELLANT.

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

APPELLANT'S EMERGENCY MOTION FOR RELEASE PENDING APPEAL

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest, Suite 350
Washington, DC 20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Appellant Peter K. Navarro*

1:22-cr-00200-APM-1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................4

I.   ARGUMENT ...................................................................................................8

  A.   Executive Privilege Precludes the Prosecution of a Senior Presidential

       Advisor Under 2 U.S.C. § 192. ...........................................................*10*

  1.  Executive Privilege is Presumptive .........................................................16

  2.  Even if Not Presumptive, the Executive Branch, not the Judicial Branch,

  Determines What Constitutes a Proper Invocation. ......................................18

  B.   Precluding Dr. Navarro from Asserting Executive Privilege as a

       Defense at Trial was a Denial of Due Process. ....................................*21*

  1.  There is a Conflict Among Courts in this District on the Application of

  the Legal Standard for a Stay Pending Appeal...............................................22

  2.  Licavoli is of Questionable Precedential Value......................................23

  CONCLUSION .....................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Bryan v. United States*, 524 U.S. 184(1998)................................................................27

*Buckley v. Valeo*, 424 U.S. 1 (1976)........................................................................14

*Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148 (D.D.C. 2019) .............17

*Dellums v. Powell*, 561 F.2d 242 (D.C. Cir. 1977)................................. 7, 13, 17, 18

*Eastland v. United States Servicemen's Fund*, 551 F.2d 384 (1975) ............... 13, 15

*Gravel v. United States*, 408 U.S. 606 (1972) ..........................................................11

*In re Sealed Case (Espy)*, 121 F.3d 729 (D.C. Cir. 1997) ................................. 9, 11

*Irons v. Diamond*, 670 F.2d 265, 268 (D.C. Cir. 1981)...........................................27

*Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961) ............................... 22, 24

*Nixon v. Adm'r of General Servs.*, 433 U.S. 425 (1977) ...........................................8

*Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) ................................... 16, 17, 19, 20

*Pauling v. Eastland*, 288 F.2d 126 (D.C. Cir. 1960) ...............................................27

*Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725

   (D.C. Cir. 1974) ..................................................................................................12

*Sinclair v. United States*................................................................................ 24, 26

*Tobin v. United States*, 306 F.2d 270 (D.C. Cir. 1962) ............................................8

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020) ........................... 9, 13, 18, 19

*Trump v. Thompson*, 142 S. Ct. 680 (2022)............................................................13

*Trump v. Thompson*, 20 F.4th 10 (D.C. Cir. 2021)............................................... 8, 12

*United States v. Bannon*, No. 21-cr-670-CJN (D.D.C.) ............................. 23, 24, 25

*United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019).........................................26

*United States v. Guadin* .................................................................................. 24, 26

*United States v. Nixon*, 418 U.S. 683 (1974).................................... 9, 12, 16, 19, 25

*United States v. Perholtz*, 836 F.2d 554 (D.C. Cir. 1988).......... 8, 10, 16, 19, 23, 28

*United States v. United States House of Representatives*, 556 F. Supp. 150 (D.D.C.

    1983) ...........................................................................................................14

*Wooden v. United States*, 142 S. Ct. 1063 (2022) ...................................................27

**Statutes**

18 U.S.C. § 3143 ....................................................................................... 7, 8, 9, 23

2 U.S.C. § 192 ............................................................................................... 15, 21

**Other Authorities**

*Assertion of Executive Privilege with Respect to a Clemency Decision*, 23 Op.

    O.L.C. 1 (1999) ......................................................................................11

Charles W. Sorenson, Jr., *Are Law Clerks Fair Game? Invading Judicial*

    *Confidentiality*, 43 Val. U. L. Rev. 1 (2008) ........................................11

*Immunity of the Assistant to the President and Director of the Office of Political*

    *Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. (July 15,

    2014) ......................................................................................................11

Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore

    B. Olson, Assistant Attorney General, Office of Legal Counsel (July 29, 1983)

    ............................................................................................................10

Pres. George Washington, Message to the House Regarding Documents Relative to

    the Jay Treaty (Mar. 30, 1796)............................................................10

*Prosecution of Contempt of Congress of an Executive Branch Official Who Has*

    *Asserted Claim of Executive Privilege*, Op. OLC (May 30, 1984) .....................21

Rex Lee, *Executive Privilege, Congressional Subpoena Power, and Judicial*

    *Review: Three Branches, Three Powers, and Some Relationships*, 1978 B.Y.U.

    L. Rev. 231 ...........................................................................................21

Defendant-Appellant Dr. Peter K. Navarro moves for release pending appeal pursuant to 18 U.S.C. § 3143(b). Dr. Navarro respectfully requests expedited briefing and disposition of this matter because he expects imminent direction to report to the Bureau of Prisons to serve his four (4) month sentence.[1] Should the Court desire additional time to consider the issue, Dr. Navarro respectfully requests a brief administrative stay of his reporting date pending this Court's disposition of this motion.

For the first time in history, a senior presidential advisor has been convicted of contempt of congress after asserting executive privilege over a congressional subpoena. Dr. Navarro has appealed and will raise a number of issues on appeal that he contends are likely to result in the reversal of his conviction, or a new trial. Chief among them are whether an "affirmative" invocation of executive privilege was required to preclude a prosecution for contempt of congress; what was required of former President Trump for a "proper" invocation of privilege; and whether such an invocation required, "personal consideration," Hr'g Tr. at 12:14 – 13:9 (Aug. 30, 2023) (ECF No. 149);[2] all questions of first impression. Moreover, applying questionable precedent, the district court precluded Dr. Navarro from

---

[1] Dr. Navarro has already paid his court-ordered fine and should his conviction be overturned or a new trial be ordered, he will seek a refund of the same.

[2] The district court's reliance on *Dellums v. Powell*, 561 F.2d 242 (D.C. Cir. 1977), is noteworthy in that the court stopped short of quoting this Court's recognition that, "the court itself" can recognize executive privilege *without* an invocation by a president. *Id.* at 248.

presenting *any evidence in his defense* explaining that even though he did default on the subpoena, he felt, as the district court found, duty-bound to assert executive privilege; *while simultaneously permitting* the government to tell the jury that Dr. Navarro's assertion of executive privilege unequivocally did not excuse him from complying with the subpoena and his failure to do so put him, "above the law." Trial Tr., at 656:2-6 (Sep. 7, 2023) (ECF No. 153).

All the foregoing issues are "close questions" or questions, "that very well could be decided the other way," *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1988), and this Court should Order Dr. Navarro released pending his appeal to permit the Court to address them. *See* 18 U.S.C. § 3143; *See also Tobin v. United States*, 306 F.2d 270, 276 (D.C. Cir. 1962) ("Especially where the contest is between different governmental units, the representative of one unit in conflict with another should not have to risk jail to vindicate his constituency's rights.").

## I.    ARGUMENT

"Because '[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately,' [executive] privilege 'safeguards the public interest in candid, confidential deliberations within the Executive Branch.'" *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (quoting *Nixon v. Adm'r of General Servs.*, 433 U.S. 425, 447 (1977); *United*

*States v. Nixon*, 418 U.S. 683, 708 (1974)).  This centuries-old privilege, recently reaffirmed by the Supreme Court, serves the purpose to, "safeguard[] the public interest in candid, confidential deliberations within the Executive Branch," and covers, "information subject to the greatest protection consistent with the fair administration of justice."  *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2024 (2020) (quoting *Nixon*, 418 U.S. at 715) (internal quotations omitted).  *See also In re Sealed Case (Espy)*, 121 F.3d 729, 751 (D.C. Cir. 1997) (holding that, "the President's access to honest and informed advice and his ability to explore possible policy options privately are critical elements in presidential decisionmaking" and recognizing an executive privilege applicable to, "communications made by presidential advisers in the course of preparing advice of the President").

Release pending appeal is governed by 18 U.S.C. § 3143(b).  Where, as here, there is no risk of flight, no danger to the community, and the appeal is not taken solely for purposes of delay—the only issue his Court need decide is whether the appeal presents a, "substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeals process."  This Circuit has held that a, "substantial question," is a, "close question," or, a question "that very well could be decided the other way."  *United States v.*

*Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1988). This Court can order a defendant released pending appeal after the district court declines to do so. Fed. R. App. P. 9(b).

> A. *Executive Privilege Precludes the Prosecution of a Senior Presidential Advisor Under 2 U.S.C. § 192.*

Since our first Presidential administration, Executive Privilege has served to protect the Constitutional doctrine of separation of powers. As then-President George Washington explained in refusing to provide information to Congress, "the boundaries fixed by the Constitution between the different departments should be preserved." Pres. George Washington, Message to the House Regarding Documents Relative to the Jay Treaty (Mar. 30, 1796). "The President is a separate branch of government. He may not compel congressmen to appear before him. As a matter of separation of powers, Congress may not compel him to appear before it." Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (July 29, 1983). The constitutional rationale for prohibiting congressional subpoenas to senior presidential advisors is straightforward. As then-Attorney General Janet Reno explained, "[s]ubjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress on matters relating to the performance of his constitutionally assigned executive functions." *Assertion of Executive Privilege with Respect to a Clemency*

*Decision*, 23 Op. O.L.C. 1, 5 (1999). "Absent immunity for a President's closest advisers, congressional committees could wield their compulsory power to attempt to supervise the President's actions, or to harass those advisers in an effort to influence their conduct, retaliate for actions the committee disliked, or embarrass and weaken the President for partisan gain." *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. at *5 (July 15, 2014). *See also In re Sealed Case (Espy)*, 121 F.3d at 750 ("The President himself must make decisions relying substantially, if not entirely, on the information and analysis supplied by advisers."). A similar rationale protects the communications between Members of Congress and their staff, *see Gravel v. United States*, 408 U.S. 606, 616 (1972) ("It is literally impossible, . . . for Members of Congress to perform their legislative tasks without the help of aides and assistants . . . ."), and Judges and their law clerks. *See e.g.*, Charles W. Sorenson, Jr., *Are Law Clerks Fair Game? Invading Judicial Confidentiality*, 43 Val. U. L. Rev. 1, 66-67 (2008) ("[A] judicial deliberations privilege, with roots in the common law as well as constitutional, functional, and separation of powers principles, is well-entrenched in both state and federal courts. . . . The relatively small amount of attention to the privilege in case law and secondary sources should not be attributed to the novelty or tenuousness of the privilege.").

That said, the privilege is not absolute, *see Nixon*, 418 U.S. at 706

("[N]either the doctrine of separation of powers, nor the need for confidentiality of

high-level communications, without more, can sustain an absolute, unqualified

Presidential privilege from immunity from judicial process under all

circumstances."), and may only be overcome by, "a strong showing of need by

another institution of government." *Senate Select Comm. on Presidential*

*Campaign Activities v. Nixon*, 498 F.2d 725, 730 (D.C. Cir. 1974), quoted in

*Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021). However, any subpoena

directed to a former senior presidential advisor, without the imprimatur of the

Judicial branch concluding the privilege has been overcome, *Nixon*, 418 U.S. at

705 ("[I]t is the province and duty of this Court 'to say what the law is' with

respect to the claim of [executive] privilege.'" (quoting *Marbury v. Madison*, 5

U.S. 1 (Cranch) 137, 177 (1803)), is void *ab initio* insofar as the prosecution of

that advisor for contempt of congress contravenes the separation of powers

doctrine. *See Trump v. Thompson*, 20 F. 4th 10, 26 (D.C. Cir. 2021) ("[A]n

implied executive privilege derives from the supremacy of the Executive Branch

within its assigned area of constitutional responsibilities, is fundamental to the

operation of Government, and is inextricably rooted in the separation of powers

under the Constitution."). *See also Eastland v. United States Servicemen's Fund*,

421 U.S. 491, 504 n.15 (1975) ("Although the power to investigate is necessarily broad it is not unlimited." (cleaned up)).

The same principal applies to former presidents. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020) ("And recipients have long been understood to retain common law and constitutional privileges with respect to certain materials, such as attorney-client communications and governmental communications protected by executive privilege."). *See also Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (Kavanaugh, J., respecting denial of application for stay) ("A former President must be able to successfully invoke the Presidential communications privilege for communications that occurred during his Presidency, even if the current President does not support the privilege claim."); *Dellums v. Powell*, 561 F.2d 242, 248 (D.C. Cir. 1977) ("Obviously, the privilege does not disappear merely because the president who made or received the communication . . . *has completed his term*." (emphasis added)).

Put differently, a congressional subpoena for information subject to executive privilege without a determination by the courts that the privilege has been overcome is an invalid exercise of congressional authority that cannot support a prosecution for contempt of congress.  As the Department of Justice framed the issue the last time a presidential advisor was threatened with prosecution for contempt of congress, "the criminal prosecution of an Executive official for

complying in good faith with the President's instructions to withhold documents *could well be unconstitutional in any event, since it imposes a heavy burden on the assertion of Executive Privilege.*"  Mot. Summary Judgment at 36 n.2, *United States v. U.S. House of Representatives*, No. 82-383 (D.D.C. 1983), attached as Exhibit 2 to Mot. Dismiss (Aug. 17, 2022) (ECF No. 35).  Accordingly, when Congress nevertheless insisted – by threat of the Attorney General's impeachment – that the Department of Justice prosecute then-EPA Administrator Anne Gorsuch (Buford) for refusing to produce documents in response to a congressional subpoena, the Department of Justice sought a declaratory judgment finding that such a prosecution was an unconstitutional violation of the doctrine of separation of powers.  *United States v. United States House of Representatives*, 556 F. Supp. 150 (D.D.C. 1983).  In dismissing the action, the District Court expressly observed that, "constitutional claims [of executive privilege] and other objections to congressional investigatory procedure may be raised as defenses in a criminal prosecution." *Id*. at 152.  Here too, the prosecution of a senior presidential advisor asserting executive privilege conflicts with the constitutional independence required by the doctrine of separation of powers.  *See Buckley v. Valeo*, 424 U.S. 1, 118-24 (1976) ("This Court has not hesitated to enforce the principal of separation of powers embodied in the Constitution when its application has proved necessary for the decisions of cases or controversies properly before it.").

The result of this conflict is a subpoena that exceeds congressional authority, *Eastland*, 421 U.S. at 504 n.15, and the prosecution of Dr. Navarro for contempt of congress should have been dismissed as either a facially unconstitutional application of 2 U.S.C. § 192, or an application of § 192 in which Congress lacked proper "authority" as required by the statute. Regardless of how the decision is reached, the outcome is the same: Dr. Navarro's prosecution for contempt of congress breached the doctrine of separation of powers, his conviction must be reversed, and the indictment must be dismissed.

Even if not presumptive, to require a former senior presidential advisor to establish that the President he or she served has made a "formal claim of privilege" after "personal consideration," as the district court did here, *See* Hr'g Tr. at 12:14 – 13:9 (Aug. 30, 2023) (ECF No. 149), unnecessarily risks vitiating the privilege. Dr. Navarro submits it is not a burden to require coequal branches of government to ascertain the applicability of any executive privilege before assuming this risk. At the very least, Dr. Navarro should only be required to establish pretrial that he reasonably believed he had a legal duty to assert executive privilege.

In summary, were this Court to conclude that executive privilege implicated the congressional subpoena at issue here, the indictment as against Dr. Navarro must be dismissed. The only question therefore is when an executive privilege implicates a congressional subpoena. Here, the privilege was implicated either

because the privilege is presumptive, or because it had been asserted by Dr. Navarro and neither Congress nor the Department of Justice sought the intervention of the Judicial branch to overcome that assertion. At the very least, these issues present, "close questions," or questions, "that very well could be decided the other way," *Perholtz*, 836 F.2d at 555, and this Court should Order that Dr. Navarro be released pending appeal.

1.  Executive Privilege is Presumptive

There is a "great public interest in maintaining the confidentiality of conversations that take place in the President's performance of his official duties[,] [and] such conversations are *presumptively privileged.*" *Nixon v. Sirica*, 487 F.2d 700, 717 (D.C. Cir. 1973) (emphasis added). *See also Nixon*, 418 U.S. at 708 ("A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately. These are the considerations justifying a presumptive privilege for Presidential communications. The privilege is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution.").

Moreover, even where an incumbent President does not support a claim of privilege, a former President, "must be able to successfully invoke [it]." *Trump*, 142 S. Ct. at 680 (Kavanaugh, J., respecting denial of application for stay). Nor

can such an invocation depend upon the means or manner – or even the words spoken – by the President whose deliberations are protected. To hold otherwise would preclude a President, incumbent or former, unexpectedly suffering from disability or death to assert the privilege. And it would enable the recalcitrant or disgruntled to affirmatively waive the privilege unbeknownst to the President. That the words cannot matter is evidenced by the means in which the privilege – or its effect – have been recognized throughout our Nation's history. *See Dellums v. Powell*, 561 F.2d 242, 248 (D.C. Cir. 1977) ("Obviously, the privilege does not disappear merely because the president who made or received the communication died, resigns, or has completed his term."). Judge Malcolm Wilkey's seminal review of historical assertions of executive privilege is particularly illustrative insofar as there is little to no consistency in the means or manner in which the privilege has historically been invoked. *See Nixon v. Sirica*, 487 F.2d 700, 733 n.9 (D.C. Cir. 1973) (Wilkins, J., dissenting). For this reason, the identification of sensitive information deemed subject to executive privilege, "gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf." *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 213 n.34 (D.D.C. 2019). And even the "court itself" can assert the privilege on behalf of a president. *Dellums*, 561 F.2d at 248.

Because the congressional subpoena to Dr. Navarro implicated former President Trump's privilege, it was incumbent upon Congress and/or the Department of Justice to confirm with the Judicial branch that the privilege could be overcome, and, having failed to do so, the indictment as against Dr. Navarro must be dismissed.  At the very least, this issue presents a "close question" or a question, "that very well could be decided the other way," *Perholtz*, 836 F.2d 554, 555, and this Court should Order that Dr. Navarro be released pending his appeal.

2.      <u>Even if Not Presumptive, the Executive Branch, not the Judicial Branch, Determines What Constitutes a Proper Invocation.</u>

Even if not presumptive, that Dr. Navarro reasonably believed he was duty-bound to assert former President Trump's executive privilege, *see McGahn*, 415 F. Supp., at 213 n.34, should preclude his prosecution for contempt of congress. Once an assertion of executive privilege had been made, it was incumbent upon the respective government branches to navigate its application.  *Trump v. Mazars*, 140 S. Ct. 2019, 2029 (2020) ("Historically, disputes over congressional demands for presidential documents have not ended up in court. Instead, they have been hashed out in the hurly-burly, the give-and-take of the political process between the legislative and the executive." (internal citation and quotation marks omitted)). Here, the district court observed:  "And whether [the government] think[s] the President invoked [executive privilege] or not here, [Dr. Navarro] thought he

invoked. . . . I don't know that anybody would really dispute that Dr. Navarro

thought he was supposed to invoke." Hr'g Tr., at 199:18-23 (Aug. 28, 2023) (ECF

No. 148). Despite this finding, and despite holding, for the first time in history, an

evidentiary hearing on the efficacy of the invocation of privilege by former

President Trump, the district court then concluded former President Trump's

invocation was insufficient.

At the outset, that the district court decided this, "open issue," *Id.*, at 12:11,

makes Dr. Navarro's appeal one of a "close question" or a question, "that very well

could be decided the other way." *Perholtz*, 836 F.2d at 555.

Moreover, the district court's intrusion into the province of the executive

branch – to dictate how a President can invoke their privilege – contravened the

separation of powers doctrine. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019,

2034 (2020) ("[C]ongressional subpoenas for the President's information

unavoidably pit the political branches against one another."). While it may be the,

"province and duty of the judicial branch to decide what the law is," *Marbury v.*

*Madison*, 1 Cranch 137 (1803), *quoted in United States v. Nixon*, 418 U.S. 683,

703 (1974), it is not for the judicial branch to decide what is required of a "proper"

and/or "formal" invocation of executive privilege. This was how Judge Wilkey

framed the issue in his dissent from this Court's opinion in *Nixon v. Sirica*, 487

F.2d 700 (D.C. Cir. 1973): "The critical issue on which I part company with my

five colleagues is, in the shortest terms, *Who Decides? . . .* The basic issue is *who decides* the scope of an applicability of the Executive Branch privilege, the Judicial Branch or Executive Branch." *Id.* at 763 (Wilkey, J., dissenting). Although not before the Court – it was undisputed that former President Nixon had asserted executive privilege – Judge Wilkey observed:

> All the court can do is make a preliminary inquiry as to a prima facie justification for the assertion of the privilege. It is up to the individual to decide whether he will assert the privilege. Other privileges, such as husband-wife, lawyer-client, priest-penitent, when recognized by the law, come into being on a showing that the relationship exists. There is no weighing of the public interest in having the testimony compared to the public interest in the particular individual maintaining his privileged communication or document.

*Id.* at 774 (Wilkey, J., dissenting). Here too, it was incumbent only of the district court to ascertain whether a privileged relationship existed – a fact beyond dispute – and whether there was a prima facie justification for the assertion of the privilege. That Dr. Navarro affirmatively asserted former President Trump's privilege in, as the district court recognized, good faith, satisfied the latter requirement.

Accordingly, the district court simply needed to confirm Dr. Navarro had asserted former President Trump's privilege before concluding his prosecution for contempt of congress contravened the doctrine of separation of powers. Indeed, for more than 40 years it has been Justice Department's that it was precluded from

prosecuting a senior presidential aide under 2 U.S.C. § 192. *See Prosecution of Contempt of Congress of an Executive Branch Official Who Has Asserted Claim of Executive Privilege*, Op. OLC (May 30, 1984) at 139 n.39 (emphasis added) (quoting Rex Lee, *Executive Privilege, Congressional Subpoena Power, and Judicial Review: Three Branches, Three Powers, and Some Relationships*, 1978 B.Y.U. L. Rev. 231, 259).

The consequence of the district court's approach here, was to preclude any meaningful discussion as between the coequal branches as to the scope and applicability of the privilege. It was not too great a burden to require coequal branches of government to ascertain the applicability of any executive privilege before assuming this risk. Because executive privilege was implicated by the congressional subpoena at issue and neither Congress nor the Department of Justice sought confirmation from the Judicial branch that the privilege had been overcome, the indictment as against Dr. Navarro for contempt of congress must be dismissed. At the very least, this presents a "close question" or "one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555.

        **B.**   *Precluding Dr. Navarro from Asserting Executive Privilege as a Defense at Trial was a Denial of Due Process.*

Two separate, but related, "close questions" or questions, "that very well could be decided the other way," *Perholtz*, 836 F.2d 555, arise following the district court's reliance on *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir.

1961), and thereby precluding Dr. Navarro from presenting any evidence to the jury concerning the reason behind his failure to comply with the congressional subpoena at issue. First, in denying Dr. Navarro's motion for release pending appeal, the district court created a conflict in this District as to whether the continued precedential value of *Licavoli* presents a "close question" insofar as another judge in this District ordered a defendant convicted of contempt of congress on precisely this issue. Second, *Licavoli* is of questionable precedential value and this Court should acknowledge that it has since been repudiated. Either issue presents a "close question," and this Court should Order Dr. Navarro's release pending appeal.

1.   <u>There is a Conflict Among Courts in this District on the Application of the Legal Standard for a Stay Pending Appeal.</u>

The district court's decision to deny Dr. Navarro's continued release pending his appeal creates a conflict within this District on what gives rise to a "close question" or a question "that very well could be decided the other way." In nearly identical circumstances, the Honorable Carl J. Nichols found that precluding a defendant, who failed to comply with a subpoena issued by the same congressional committee as Dr. Navarro, from presenting any defense based on this Court's opinion in *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), presented a, "substantial question of law that is likely to result in reversal or an

order for a new trial." Order, *United States v. Bannon*, No. 21-cr-670-CJN (D.D.C. Nov. 7, 2022) (ECF No. 168). Unlike that defendant, Dr. Navarro's conviction turned on the district court answering an "open question" for the first time, ruling on what was required of former President Trump to "formally" invoke his privilege. Should this Court find either that the privilege should have been acknowledged or that Dr. Navarro should have been permitted to present evidence of his reliance on the assertion of executive privilege in his defense, the reversal of his conviction will be required.

2.     *Licavoli* is of Questionable Precedential Value.

Further, whether Dr. Navarro was *also* precluded from presenting evidence of the reason for his failure to comply with the subpoena at issue is a separate "close question" that warrants his release pending appeal, as it likely would result in a new trial if that information was not meant to be precluded, or if that information was meant to be precluded wholesale but still allowed to be used by the government. 18 U.S.C. § 3143 (b)(1)(B)(ii).

Specifically, the district court extended *Licavoli*'s reach to a good faith assertion of executive privilege. *See e.g.*, Hr'g Tr., at 291:17-18 (Sep. 5, 2023) ("The Court: I understand I've hamstrung you dramatically."). This was necessitated, the district court found, because *Licavoli* required the government to prove only, "a deliberate intention to do the act," and specified that "evil motive or

purpose . . . is not an element of either of the[] offense[].” *Licavoli*, 294 F.2d at 209.

However, there was ample basis for the district court to conclude that *Licavoli* was inapplicable to the case at bar and this Court should similarly so hold. First, this Court’s conclusion in *Licavoli* was based on assessment of whether a violation of § 192 requires some, “evil motive or purpose.” *Id.* at 209. The Court’s holding was based, in turn, on the Supreme Court’s decision in *Sinclair v. United States*, 279 U.S. 263 (1929), that proof of, “moral turpitude,” was not an element of a § 192 offense. *Sinclair v. United States*, 279 U.S. 263, 299 (1929).

*Sinclair*, however, has long since been abandoned by the Supreme Court as repudiated. *See United States v. Guadin*, 515 U.S. 506, 520 (1995) (“Other reasoning in *Sinclair*, not yet repudiated, we repudiate now.”). To that end, although Judge Nichols acknowledged that *Licavoli*’s reasoning now rests on bad law, he was aware of no authority permitting a district court to itself conclude this Court’s infirm precedent non-binding. *See United States v. Bannon*, No. 21-cr-670, 2022 U.S. Dist. LEXIS 132863, at *4 (Apr. 6, 2022). Consequently, Judge Nichols ordered Mr. Bannon’s release pending appeal and assumed this Court would formally abandon *Licavoli*. *See* Hr’g Tr., at 76:15-25, 77:1-9, 1:21-cr-00670-CJN (D.D.C. Oct. 21, 2022) (“The Court: Mr. Bannon also argues that he should not have to serve his sentence while he appeals. I agree . . . I find that Mr.

Bannon['s]. . . appeal. . . would raise substantial questions of law.  In particular . . .

there is a substantial question regarding what it should mean for a defendant to

willfully make default under the contempt of Congress statute and what evidence a

defendant should be permitted to introduce on that question.  This case also raises

substantial questions about the effect of the congressional subpoena recipients. . .

and questions regarding whether and to what extent the [January 6th] Committee

was formed and operate in compliance with its rules.").  *See also* Order Staying

Sentencing Pending Appeal, 1:21-cr-00670-CJN (D.D.C. Nov. 7, 2022) (ECF No.

168).

Both Judge Nichols and the district court below also considered whether

*Licavoli*'s holding applies to an assertion of executive privilege, as distinct from a

defense of advice of counsel.  The key distinction between a defense of advice of

counsel and an assertion of executive privilege is that, as discussed above, the

latter implicates separation of powers principals.  *See, e.g.*, *United States v. Nixon*,

418 U.S. 683, 708 (1974) ("The [executive] privilege is fundamental to the

operation of Government and inextricably rooted in the separation of powers under

the Constitution.").  Judge Nichols adopted the government's rationale that, "the

intent element of the offense should [not] change depending on the factual

circumstances of the crime."  *Bannon*, 2022 U.S. District LEXIS 132863, at *6.

Similarly here, the district court concluded that, "the proof required to satisfy the

state-of-mind element of a criminal statute does [not] change simply because the defendant is a former Executive Branch official who has resisted a congressional subpoena." Order at 32 (Jan. 19, 2023) (ECF No. 68). *Licavoli* did not so hold – to the contrary, that the jury may conclude a defendant's state of mind gives rise to a constitutional contravention of the separation of powers doctrine is precisely the reason the Supreme Court repudiated *Sinclair. See, e.g., United States v. Gaudin*, 515 U.S. 506, 520-22 (1995) ("Other reasoning in *Sinclair*, not yet repudiated, we repudiate now. . . how [questions of law are] treated for purposes of determining evidence says nothing about how [they] should be treated when. . . made an element of a criminal offense. It is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another.").

Moreover, this Court need not be bound by *Licavoli*'s antiquated rationale. Since that decision was reached, both this Court and the Supreme Court have expounded upon the meaning of willfulness in the context of criminal prosecutions. For example, in *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019), this Court explained:

> Most criminal prohibitions require only proof that the crime was committed "knowingly," meaning that the defendant knew the facts that made his act illegal, even if he didn't know the act was illegal. When Congress wants to ensure that defendants will be convicted only if they have a more culpable state of

mind, it limits the crime to conduct that a defendant engages in "willfully."

*Id.* at 691.  Similarly, as Justice Kavanaugh recently explained:

> The deeply rooted presumption of *mens rea* generally requires the Government to prove the defendant's *mens rea* with respect to each element of a federal offense, unless Congress plainly provides otherwise.  In addition, with respect to federal crimes requiring "willfulness", the Court generally requires the Government to prove that the defendant was aware that his conduct was unlawful.

*Wooden v. United States*, 142 S. Ct. 1063,1076 (2022) (Kavanaugh, J., concurring) (citing *Bryan v. United States*, 524 U.S. 184, 191-93 (1998)).  Thus, even assuming *Licavoli*'s holding applies despite the implication of a constitutional contravention of the separation of powers doctrine, *see Pauling v. Eastland*, 288 F.2d 126, 129 (D.C. Cir. 1960) ("If a person under indictment or under judgment of conviction is before the court and challenges the indictment or conviction, the court must apply the law, paying heed and giving effect, first of all, to Constitutional provisions."), that the rationale underlying its result has been abandoned in this Circuit and by the Supreme Court relieve any panel of this Court from being bound by it.  *See Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981) (recognizing the authority of one panel to resolve, "an apparent conflict between two prior decisions").

At worst, the application of *Licavoli* to an assertion of executive privilege by a senior presidential advisor is a "close questions" or a question, "that very well

could be decided the other way," *Perholtz*, 836 F.2d at 555, and at best, this Court will likely hold *Licavoli* inapplicable requiring in a reversal of Dr. Navarro's convictions and a new trial at which he is permitted to introduce evidence of the reason for his failure to comply with the subpoena at issue.

## CONCLUSION

For all of the foregoing, Appellant-Defendant Dr. Peter K. Navarro respectfully requests this Court Order that Dr. Navarro be released pending appeal.

## CERTIFICATE THAT APPEAL IS NOT TAKEN FOR DELAY

I hereby certify, pursuant to Circuit Rule 9(b)(4), that this appeal is not taken for delay.

_____
/s/
Stanley Woodward Jr.

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 32(a)(7)(B), that the foregoing brief complies with the type-volume limitation because it contains 5,180 words, and thus not more than 5,200 words, excluding those exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

_____
/s/
Stanley Woodward Jr.

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on March 30, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/
Stanley Woodward Jr.
