UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————————

No. 24-3006
(No. 22-cr-200 (APM))

————————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

PETER NAVARRO,                               Appellant.

## GOVERNMENT'S OPPOSITION TO APPELLANT'S MOTION FOR RELEASE PENDING APPEAL

### INTRODUCTION

Following a jury trial before the Honorable Amit P. Mehta, appellant Peter Navarro was convicted of two counts of contempt of Congress, 2 U.S.C. § 192, and received concurrent sentences of four months' imprisonment. Navarro's convictions stemmed from refusing to comply with a subpoena issued by the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the U.S. Capitol ("Select Committee"), both by failing to produce records (Count One) and by failing to appear for a deposition (Count Two). After conviction, Navarro sought release pending appeal. The district court

denied that request, and Navarro now moves this Court for release. Release is unwarranted. As the district court found, Navarro fails to show a "substantial question of law or fact of law or fact" that is "likely" to result in reversal or an order for a new trial. 18 U.S.C. § 3143(b); *see* Fed. App. R. 9(c).

Navarro raises two, meritless arguments. First, he claims that his prosecution was "precluded" by an assertion of executive privilege (Motion (M.) 10). This claim is based on a faulty premise. As the district court found, Navarro failed to establish any privilege invocation by former President Trump in response to the Select Committee subpoena. Moreover, President Biden expressly disclaimed the privilege. And even if President Trump had asserted executive privilege, Navarro still could not show a likelihood of reversal or a new trial, because it would not have justified his total noncompliance with the subpoena. Second, Navarro argues that precluding a defense that he relied on executive privilege violated his right to due process (M.11). This claim is refuted by binding case law from the Supreme Court and this Court that makes clear that the mens rea element of contempt of Congress requires only a deliberate and intentional failure to comply and that good faith is not a defense.

Because Navarro's claims are unfounded, his motion for release pending appeal should be denied.

## BACKGROUND

### The Motion to Dismiss the Indictment

The indictment charged Navarro with failing to provide documents on February 23, 2022, and to appear for a deposition on March 2, 2022, as required by a Select Committee subpoena served on Navarro on February 9, 2022 (ECF 1). With respect to the document request, the subpoena instructed Navarro that, if he withheld any records, he should provide a detailed log of which records were withheld and why (*id.* ¶12). Similarly, the House's deposition regulations attached to the subpoena made clear that objections during the deposition had to be made on a question-by-question basis (*id.* ¶14). Navarro did not comply in any way with the subpoena but claimed that President Trump had invoked executive privilege and that he therefore could not comply (*id.* ¶17). Navarro persisted in his noncompliance even though the Select Committee explained that many topics listed in the subpoena's cover letter could not implicate executive privilege and that, in any event,

Navarro was still required to appear for the deposition and assert any objections on a question-by-question basis (*id.* ¶¶18-21).

On August 17, 2022, Navarro filed a motion to dismiss the indictment, in which he argued that "when a former president invokes Executive Privilege as to a senior presidential advisor, that advisor cannot thereafter be prosecuted for contempt of [C]ongress" (ECF 34 at 11-12, 17). Navarro noted that the House Select Subcommittee on the Coronavirus Crisis ("COVID Subcommittee") had issued him a different subpoena in November 2021 and that President Trump had issued a press release the same month directing Navarro to assert executive privilege with respect to that subpoena (*id.* 5).

The government opposed the dismissal motion, explaining that there was no evidence that executive privilege was ever invoked with respect to the Select Committee subpoena (ECF 44 at 5). The government added that the "only evidence of a president—former or current—making an executive privilege determination with respect to the [Select] Committee's subpoena" was a February 28, 2022, letter from the White House to Navarro, notifying him that President Biden was not invoking privilege (*id.* 5).

The government also filed a motion in limine seeking to preclude Navarro from advancing a trial defense based on executive privilege (ECF 58 at 3). Relying on *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), the government argued that it was only required to prove "a deliberate and intentional failure to appear or produce records," and therefore "[a] defendant's mistaken belief that the law excused his [non]compliance—here, for [Navarro], based on executive privilege—is not a valid defense to contempt of Congress" (*id.* 4).

At a November 4, 2022, motions hearing, defense counsel conceded that Navarro could not invoke executive privilege in response to the Select Committee subpoena unless President Trump directed him to do so (11/4/22 Tr. 20-21 (agreeing that "[i]t is entirely ineffective for a former senior adviser to invoke privilege without an instruction to do it")). Asked by the district court whether there was any evidence that Navarro had received a direct communication from President Trump or somebody authorized by President Trump telling him to invoke executive privilege in response to this subpoena, defense counsel stated only that President Trump and Navarro "had a conversation," and "as a result of that

conversation," Navarro "understood he was supposed to invoke executive privilege" (*id.* 21, 23).

The district court denied Navarro's motion to dismiss and granted the government's motion in limine. *United States v. Navarro*, 651 F. Supp. 3d 212 (D.D.C. 2023). The court explained that it "need not wade into . . . judicially uncharted constitutional waters" because Navarro's "testimonial immunity defense rests on an unsupported factual premise: that President Trump invoked executive privilege with regard to the Select Committee's subpoena." *Id.* at 222. Navarro, however, had "failed to come forward with any evidence to support the claimed assertion of privilege." *Id.* The court also agreed with the government that "*Licavoli* forecloses a defense premised solely on [Navarro's] claimed belief that President Trump's invocation of executive privilege excused his nonappearance before the Select Committee." *Id.* at 238.

Navarro moved for reconsideration and asked for an evidentiary hearing on whether President Trump had invoked executive privilege (ECF 71 at 1). He  provided a January 23, 2023, letter from President Trump's attorney Evan Corcoran, that was solicited after the order denying his dismissal motion and that stated President Trump "considers

the conversations and correspondence [Navarro] had with him, like those he had with his other senior aides, to be protected against disclosure by executive privilege," and Navarro "had an obligation to assert executive privilege on his behalf" (*id.* 12, Ex. A). The district court granted reconsideration and held a hearing on August 28, 2023.

At the outset of the hearing, defense counsel acknowledged that Navarro would not testify that President Trump had expressly told him to invoke executive privilege with respect to the Select Committee subpoena (8/28/23 Transcript (Tr.) 10). Navarro took the stand and testified that he spoke to President Trump in November 2021 after receiving the COVID Subcommittee subpoena, and "got the very clear message" that he should not "talk to these people, meaning these Congressional Committees" or "provide them documents" because President Trump "thought [it] was a witch hunt" (*id.* 49). On February 9, 2023, after receiving the Select Committee subpoena, Navarro contacted President Trump's assistant, telling her that he "was obviously looking for direction on this" (*id.* 59). There was no evidence, however, that Navarro provided the subpoena to President Trump (*id.* 89-90). On February 20, Navarro spoke on the phone with President Trump for three

minutes (*id.* 64). Navarro did not testify about what President Trump said during the call, but Navarro claimed that "it was very clear that the privilege was invoked, very clear" (*id.*). After the testimony, defense counsel acknowledged that "we wish there was more here from former President Trump" (*id.* 96). Defense counsel also "agree[d]" that "an invocation as to one subpoena does not apply to a different subpoena" and "[i]t cannot be a blanket assertion of privilege" (*id.* 97).

The district court found, "based upon all of the evidence, including [Navarro's] testimony, that he has not carried his burden of establishing a formal claim of privilege from President Trump after his personal consideration of the Select Committee subpoena, or that President Trump authorized [Navarro] to make a determination about whether to invoke executive privilege with respect to the subpoena" (8/30/23 Tr. 23-24). The district court considered the Corcoran letter to be the "most compelling evidence," because "this was an opportunity to clearly state that [President Trump] had formally invoked or claimed executive privilege, but that is not what the letter says" (*id.* 24). In the court's estimation, that "outweigh[ed]" Navarro's "nondescript testimony regarding a three-minute phone call he had with [President Trump]" (*id.*

24-25). The court found "the lack of detail" in Navarro's testimony to be "telling," because "if it was truly clear," as Navarro testified, that "'the privilege was invoked,'" then Navarro "should not have had any trouble conveying to the [c]ourt what President Trump actually told him" (*id.* 25). The court therefore found "that there was no formal invocation of executive privilege after personal consideration with respect to the Select Committee subpoena," and Navarro was not authorized "to invoke the privilege on the President's behalf" (*id.*).

Because the parties were "in agreement that even if the executive privilege or testimonial immunity had been properly invoked, such privileges were not absolute but qualified," the court made findings "as to whether qualified immunity applies" as "an alternative ground" (8/30/23 Tr. 28). The court rejected Navarro's argument that he was "entitled to a determination of the qualified immunity question prior to the initiation of a contempt prosecution" (*id.* 31). Relying on *Trump v. Thompson*, 20 F.4th 10 (D.C. Cir. 2021), the court found that, even if Navarro had shown that President Trump "had properly invoked executive privilege, such a privilege would have been pierced by Congress's and President Biden's express interest in the documents and

testimony that were sought by the Select Committee from" Navarro (8/30/23 Tr. 36).

## Navarro's Motion for Release in the District Court

In his sentencing memorandum, Navarro sought release pending appeal under 18 U.S.C. § 3143(b), claiming that his case presents "close question[s]" involving executive privilege and selective prosecution (ECF 160 at 21-29). In a supplement, Navarro also argued that the district court should stay his sentence "pending his appeal of the applicability of *Licavoli* to assertions of executive privilege" (ECF 168 at 4).

On February 8, 2024, the district court denied Navarro's release motion, finding that none of his claims raised substantial questions of law (ECF 169). The court found that Navarro's challenges to *Licavoli* were unpersuasive and "entirely conclusory" (*id.* 2-5). Navarro's claim that executive privilege barred his prosecution also did not present a close question (*id.* 5-11). Although Navarro received multiple "bite[s] at the apple," he failed to show that President Trump invoked privilege in response to the Select Committee subpoena (*id.* 5). And "[b]ecause the court found no evidence that President Trump ever invoked the privilege,

no 'presumption' ever attached to [Navarro's] testimony or records" (*id.* 7).

The court also reiterated that, "even if President Trump had properly invoked executive privilege—and there is no evidence he did so—qualified testimonial immunity would not have excused his failure to appear [for the deposition] or foreclosed his prosecution" (ECF 169 at 9). Moreover, Navarro's "claim of *testimonial* immunity does not extend to his conviction for refusing to produce *documents*" (*id.*). The court rejected Navarro's claim that "a judicial resolution [of a privilege claim is a necessary precondition to prosecution under the contempt statute," finding that his "'pre-prosecution judicial order' theory does not present a 'close question'" (*id.* 9-11).[1]

---

[1] The court rejected Navarro's selective-prosecution claim, which is not part of the instant motion (ECF 169 at 11-12).

**Navarro Has Not Shown that His Appeal Raises a Substantial Question Likely to Result in Reversal or a New Trial.**

Navarro claims that his appeal raises two "substantial questions," 18 U.S.C. § 3143(b): first, whether "executive privilege precludes the [contempt] prosecution of a senior presidential advisor" (M.10); and second, whether he should have been permitted to "assert[] executive privilege as a defense at trial" (M.21). Neither claim presents a "close question," *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987), so he must serve his sentence while pursuing his appeal.

## A.    18 U.S.C. § 3143(b)

Under 18 U.S.C. § 3143(b), Navarro must be detained pending appeal, unless the court finds that his appeal "raises a substantial question of law or fact likely to result in reversal [or] an order for a new trial . . . ." 18 U.S.C. § 3143(b)(1)(B)(i)-(ii). "The law has shifted from a presumption of release to a presumption of valid conviction." *Perholtz*, 836 F.2d at 555.

The statute "requires a two-part inquiry: (1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in

the defendant's favor be likely to lead to reversal?" *Perholtz*, 836 F.2d at 555. "A substantial question is a close question or one that very well could be decided the other way." *Id.* (cleaned up). This "more demanding standard" is in "accord with the expressed congressional intent to increase the required showing on the part of the defendant." *Id.* at 555-56.

### B. Navarro's Claim that His Prosecution Was "Preclude[d]" by Executive Privilege Does Not Raise a Substantial Question of Law or Fact.

Navarro claims that the indictment should have been dismissed because the Select Committee subpoena "implicated" executive privilege and required a "determination by the courts that the privilege ha[d] been overcome" before he could be prosecuted for contempt (M.13, 15). This claim does not raise a substantial question because it rests on faulty factual and legal premises. First, the Select Committee subpoena was not "subject to executive privilege" because, as the district court found, President Trump did not invoke executive privilege in response to that subpoena. Second, Congress did not require "judicial imprimatur" (M.12) before voting to hold Navarro in contempt, nor did the government need

it before instituting this prosecution. It is Navarro's novel theory—that the Executive and Congress need a green light from the Judiciary before exercising their powers—that "contravenes the separation of powers doctrine" (*id.*). Third, executive privilege—even if properly invoked—would not have relieved Navarro of the obligation to provide unprivileged documents and appear for his deposition.

"Executive privilege is an extraordinary assertion of power not to be lightly invoked." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 389 (2004). "The canonical form of executive privilege"—the presidential communications privilege—"allows a President to protect from disclosure documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential." *Thompson*, 20 F.4th at 25. But executive privilege is not absolute; it is only qualified or "presumptive," *United States v. Nixon*, 418 U.S. 683, 707-08 (1974), meaning it "may be overcome by a strong showing of need by another institution of government." *Thompson*, 20 F.4th at 26. This Court summarized the "contours" of executive privilege in *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997):

> The President can invoke the privilege when asked to produce documents or other materials that reflect presidential

decisionmaking and deliberations and that the President believes should remain confidential. If the President does so, the documents become presumptively privileged. However, the privilege is qualified, not absolute, and can be overcome by an adequate showing of need.

*Id.* at 744-45.

Navarro asserts that the subpoena "implicated former President Trump's privilege" (M.18). *See Thompson*, 20 F.4th at 26 (privilege "resides with the sitting President," but "former Presidents retain for some period of time a right to assert executive privilege over documents generated during their administration"). As the district court explained, however, that assertion "rests on an unsupported factual premise: that President Trump invoked executive privilege with respect to the Select Committee's subpoena." *Navarro*, 651 F. Supp. 3d at 222. Despite multiple "bite[s] at the apple" (ECF 169 at 5)—including an evidentiary hearing at Navarro's request—Navarro failed to show that President Trump invoked privilege. And without instruction from the privilege-holder to assert on his behalf, Navarro's own attempt to claim privilege to the Select Committee was, as he conceded, "entirely ineffectual" (11/4/22 Tr. 20-21; ECF 169 at 7).

Navarro does not appear to argue that the district court's factual finding that President Trump did not invoke privilege presents a "close question," *Perholtz*, 836 F.2d at 555—nor could he show clear error in that finding. The only evidence that Navarro presented was his own "nondescript testimony regarding a three-minute phone call he had with Trump" (8/30/23 Tr. 24-25), which even defense counsel appeared to acknowledge was insufficient (8/28/23 Tr. 10, 96 ("[W]e wish there was more here from former President Trump.")). Although President Trump issued a press release in November 2021 "telling [Navarro] to protect executive privilege" in response to the COVID Subcommittee subpoena, defense counsel conceded that "an invocation as to one subpoena does not apply to a different subpoena," and "it cannot be a blanket assertion of privilege" (*id.* 97). Moreover, the "record evidence that President Trump directed [Navarro] to invoke executive privilege" in response to "an entirely different subpoena" makes the "absence of [such] evidence" in connection with the Select Committee subpoena even more striking. *Navarro*, 651 F. Supp. 3d at 224-5.

Navarro also appears to argue that he had a "legal duty," as a former aide, to invoke the privilege on President Trump's behalf (M.17).

But, as noted, Navarro acknowledged that he lacked authority to invoke privilege unless directed to do so by President Trump (11/4/22 Tr. 20-21). Navarro testified that he contacted President Trump's assistant to seek "direction," and even spoke with President Trump about the matter (8/28/23 Tr. 59, 64). Navarro's concern about the ability of a President "suffering from disability or death" to invoke privilege is simply not presented here (M.17). Because President Trump did not invoke the privilege, Navarro had no "duty" to do so on President Trump's behalf— and Navarro's claim was "entirely ineffectual" (11/4/22 Tr. 20-21).

For the same reason, Navarro cannot rely on the "presumptive" nature of the privilege (M.15-16). As the district court correctly noted, "presumptive" does not mean "that Congress and the courts should unfailingly accept that executive privilege applies whenever an aide to the [former] President asserts it. . . . ['Presumptively privileged' means] that courts will assume the privilege applies when invoked, but it is not an absolute privilege and can be overcome by countervailing considerations." (ECF 169 at 7.) In other words, "the executive privilege is a qualified one." *Thompson*, 20 F.4th at 26. For the presumptive privilege to apply, however, the President must invoke it. *See In re Sealed*

*Case*, 121 F.3d at 744; *Dellums v. Powell*, 561 F.2d 242, 248 (D.C. Cir. 1977). That did not happen here.

Although the former President did not invoke executive privilege, and the current President expressly disclaimed the privilege, Navarro nevertheless argues that Congress and the Executive needed "the imprimatur of the Judicial branch" before exercising powers in their respective spheres (M.12-13). Navarro provides no authority for this novel theory. It would turn the separation of powers on its head to require judicial preclearance before Congress can investigate or the Executive can prosecute. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) ("The congressional power to obtain information is 'broad' and indispensable,'"; a congressional subpoena is valid if it is "related to, and in furtherance of, a legitimate task of Congress."); *Thompson*, 20 F.4th at 35 (recognizing "Congress's uniquely weighty interest in investigating the causes and circumstances of the January 6th attack"). *See also United States v. Armstrong*, 517 U.S. 456, 464 (1996) (prosecutorial power is "a 'special province' of the Executive").

Judicial preclearance is not a prerequisite to prosecution for contempt of Congress. Instead, "constitutional claims and other

objections to congressional investigatory procedures may be raised as defenses in a criminal prosecution." *United States v. U.S. House of Representatives*, 556 F. Supp. 150, 152 (D.D.C. 1983). *See also Ansara v. Eastland*, 442 F.2d 751, 754 (D.C. Cir. 1971) ("We are aware that the protections available within the legislative branch or elsewhere do not provide a conclusive determination for plaintiffs, as to their constitutional rights, before they are exposed to the risk of criminal prosecution."). The district court gave Navarro multiple opportunities to establish an executive-privilege defense, but he failed to do so.

A defendant "cannot be released unless the appeal raises a substantial question likely to result in reversal of all counts on which imprisonment is imposed." *Perholtz*, 836 F.2d at 557. Even if Navarro could show that President Trump invoked executive privilege, he has not demonstrated a likelihood of reversal on either count—let alone both. Navarro concedes that executive privilege "is not absolute" (M.12). As to the documents count, this Court has rejected the notion that even a sitting President may assert a generalized claim of executive privilege to absolutely immunize himself from a congressional subpoena for records. *Senate Select Committee v. Nixon*, 498 F.2d 725, 729-31 (D.C. Cir. 1974)

(en banc). As a former presidential advisor, Navarro was certainly not immune and thus required to produce unprivileged documents while asserting any valid privileges on a document-by-document basis. And as to the deposition count, Navarro does not claim that he had absolute testimonial immunity (M.12-13)—nor would there be any basis to do so. Office of Legal Counsel (OLC) opinions have at most endorsed testimonial immunity for *sitting* presidential advisors. *Immunity of the Director of the Office of Political Strategy and Outreach*, 38 Op. O.L.C. 5 (July 15, 2014) ("Simas Opinion"). As the district court recognized, however, no OLC opinion endorses testimonial immunity for former advisors of former Presidents (ECF 169 at 8-9). In any event, the OLC guidance on sitting advisors' testimonial immunity explicitly does not apply to "a subpoena for documents." Simas Opinion, 38 Op. O.L.C. at 15.

Therefore, an assertion of executive privilege, even if recognized here, would not have excused Navarro's total noncompliance with the subpoena. Many topics covered by the subpoena—which included Navarro's personal writings and communications with individuals outside the White House (see ECF 79-1 at 19-20)—could not possibly have implicated executive privilege, as the Select Committee explained

to Navarro when it rejected his blanket privilege claim (ECF 1 ¶18). Navarro had already spoken and published prolifically on his role in the events leading up to January 6. As the district court admonished at sentencing, Navarro was "more than happy to talk to the press about what [he] did, write about it in [his] book, but not go up to the Hill to talk about it to Congress" (1/25/24 Tr. 87-88). The Select Committee repeatedly instructed Navarro on its privilege protocols: if he withheld documents, he should provide a detailed log; and he could "assert any executive privilege objections on a question-by-question basis during the deposition" (*id.* ¶¶12, 14, 16, 18). Even if Navarro believed President Trump invoked privilege, he offered no justification for failing to use these channels rather than stonewalling the Committee.

Navarro also fails to address the district court's alternative finding: as in *Trump v. Thompson*, 20 F.4th 10, executive privilege "would have been pierced by Congress's and President Biden's express interest in the documents and testimony that were sought by the Select Committee from" Navarro (8/30/23 Tr. 36). In other words, even if the court had found that President Trump invoked privilege, it would also have found that the privilege yielded to "the hydraulic constitutional force" of

Congress's "uniquely weighty interest" in the Select Committee's investigation and the sitting President's "considered judgment that the interests of the United States and the interests of the Executive Branch favor disclosure." *Thompson*, 20 F.4th at 35, 37. Thus, even if Navarro could show a "substantial question of law or fact" relating to whether President Trump invoked privilege, he cannot show a likelihood of reversal or a new trial. 18 U.S.C. § 3143(b).

### C. Binding Precedent Forecloses a Good-Faith Defense.

Navarro's claim that the district court erroneously precluded him from showing that he acted on a belief that executive privilege excused his noncompliance is foreclosed by binding case law.

Under 2 U.S.C. § 192, a person under congressional subpoena "to give testimony or to produce papers" who "willfully makes default" is guilty of contempt of Congress. The Supreme Court has held that the mens rea element of § 192 requires "a deliberate, intentional refusal to answer." *Quinn v. United States*, 349 U.S. 155, 165 (1955). *See also Watkins v. United States*, 354 U.S. 178, 208 (1957) ("An erroneous determination on [witness's] part, even if made in the utmost good faith, does not exculpate him . . . ."); *Sinclair v. United States*, 279 U.S. 263,

274 (1929) ("Intentional violation is sufficient to constitute guilt.";
holding that defendant was not "entitled to a new trial because the court
excluded evidence that in refusing to answer he acted in good faith on the
advice of competent counsel"), *overruled in part on other grounds by
United States v. Gaudin*, 515 U.S. 263 (1929). This Court has followed
the lead of the Supreme Court in *Licavoli* and other cases. *See Licavoli*,
294 F.2d at 208-09 (holding that "willfully makes default" means "a
deliberate, intentional failure, without more"; rejecting the premise that
"evil motive" is "a necessary ingredient of willfulness" under § 192; and
holding that a defendant's good-faith reliance on advice of counsel "is not
a defense to a charge of failure to respond"); *see also Dennis v. United
States*, 171 F.2d 986, 990 (D.C. Cir. 1948); *Fields v. United States*, 164
F.2d 97, 100 (D.C. Cir. 1947).

As the district court recognized, just as "good faith reliance upon
advice of counsel [is not] a defense to contempt," Navarro "similarly
[could not] argue that his failure to appear was unintentional or not
deliberate because he believed in good faith that President Trump's
purported invocation of executive privilege excused his appearance."
*Navarro*, 651 F. Supp. 3d at 238-39. The district court's reliance on

binding case law does not present a substantial question overriding the "presumption of valid conviction." *Perholtz*, 836 F.2d at 556.

Navarro suggests that this Court could disavow *Licavoli* because it is "antiquated" (M.26). "One three-judge panel, [however], does not have the authority to overrule another three-judge panel of the court." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996). Nor can Navarro expect that the en banc Court will overrule *Licavoli, Dennis*, and *Fields.* En banc rehearing is "rare." *Chambers v. District of Columbia*, 35 F.4th 870, 879 (D.C. Cir. 2022) (en banc). Moreover, this Court is bound by the Supreme Court cases, such as *Quinn* and *Sinclair*, holding that Section 192 requires only a deliberate intent not to answer and that good faith is not a defense. *See Yung v. Lee*, 432 F.3d 142, 148 (2d Cir. 2005) ("[T]he Supreme Court's interpretation of a statute binds lower federal courts in their application of that statute."). To the extent that Navarro suggests that more recent case law indicates the Supreme Court would no longer follow the traditional mens rea standard for § 192 (M.26-27), it is well settled that if a Supreme Court precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly

controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (cleaned up).

Navarro's various arguments for why *Licavoli* does not control in this case do not stand up to scrutiny. He claims that *Sinclair*, a Supreme Court precedent cited by *Licavoli*, was "repudiated" by *Gaudin* (M.26). But *Gaudin* repudiated a different aspect of *Sinclair*—that "pertinency" is a question of law for the court, not the jury. 515 U.S. at 520-21. *Gaudin* dealt with a different statute, so had no occasion to revisit or disturb *Sinclair*'s holding on the mens rea for contempt of Congress.

Navarro also relies on cases interpreting "the meaning of willfulness" in other statutes (M.26-27). The Supreme Court has cautioned, however, that "'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998). The context here is significant. Both the Supreme Court and this Court have interpreted § 192 to require "a deliberate, intentional failure, without more," and to preclude good-faith defenses. *E.g., Quinn*, 349 U.S. at 165; *Sinclair*, 279 U.S. at 274; *Licavoli*, 294 F.2d at 208.

The "application of *Licavoli* to an assertion of executive privilege" does not raise a substantial question, as Navarro claims (M.27). The mens rea element of contempt of Congress is a question of statutory interpretation, which does not turn on the facts of a given case. *See United States v. Santos*, 553 U.S. 507, 522 (2008) (opinion of Scalia, J.) ("[T]he meaning of words in a statute cannot change with the statute's application"). Just as good-faith reliance on "advice of counsel cannot immunize a deliberate, intentional failure to appear pursuant to a lawful subpoena," *Licavoli*, 294 F.2d at 209, even a good-faith belief that President Trump invoked executive privilege could not excuse Navarro's nonappearance. *Navarro*, 651 F. Supp. 3d at 238-239. As the district court explained, there also is no "separation of powers principle" (M.25) that entitles Navarro to "a more stringent state-of-mind standard" than "the average person": "[T]he proof required to satisfy the state-of-mind element of a criminal statute does not change simply because the defendant is a former Executive Branch official who has resisted a congressional subpoena." *Id.* at 239.

Finally, the fact that a different judge granted release pending appeal in a different case does not show any basis to release Navarro.

Navarro argues that the district court "created a conflict in this District" in applying 18 U.S.C. § 3143(b) (M.22), because the Honorable Carl J. Nichols granted the § 3143(b) motion of defendant Stephen Bannon—another former President Trump advisor—after finding his appeal raised substantial questions of law or fact, including whether Bannon should have been allowed to present evidence of good-faith reliance on advice of counsel as a defense to contempt of Congress. *See United States v. Bannon,* Cr. No. 21-670-CJN, ECF 168.[2] But with due deference to Judge Nichols, whether *Licavoli* presents a "substantial question of law or fact" under § 3143(b) is not itself a substantial question of law or fact likely to result in reversal or an order for a new trial. 18 U.S.C. § 3143(b). Moreover, the relevant comparison between Navarro's case and Bannon's is that both courts applied *Licavoli* to preclude good-faith defenses to contempt based on advice of counsel and executive privilege.

---

[2] Bannon's appeal, No. 22-3086, was argued on November 9, 2023, before Judges Pillard, Walker, and Garcia. The panel has not yet issued a decision.

# CONCLUSION

The government respectfully requests that Navarro's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
ELIZABETH H. DANELLO
ELIZABETH ALOI
JOHN CRABB
Assistant United States Attorneys

_____/s/_____
MARK HOBEL
D.C. Bar # 1024126
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Mark.Hobel@usdoj.gov
(202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 27(d)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this motion contains 5174 words, and therefore complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). This motion has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
_____
MARK HOBEL
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Stanley Woodward, Jr., Esq., Stanley@BrandWoodwardLaw.com, on this 4th day of March, 2024.

/s/
_____
MARK HOBEL
Assistant United States Attorney
