ARGUMENT NOT YET SCHEDULED

APPEAL NO. 24-3006

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

UNITED STATES OF AMERICA,                                              APPELLEE

v.

PETER K. NAVARRO,                                                   APPELLANT.

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

---

APPELLANT'S REPLY IN SUPPORT OF AN EMERGENCY MOTION FOR
RELEASE PENDING APPEAL

---

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Appellant Peter K. Navarro*

1:22-cr-00200-APM-1

Dr. Navarro has now been ordered to report to the custody of the Bureau of Prisons, FCI Miami, on or before 2:00PM EDT on March 19, 2024. Accordingly, Dr. Navarro respectfully reiterates his request for an administratively stay so as to permit the Court to resolve the instant motion. Should this Court deny Dr. Navarro's motion, he respectfully requests an administrative stay so as to permit the Supreme Court review of this Court's denial.

Almost the entirety of the government's opposition to Dr. Navarro's request for release pending appeal, *see* 18 U.S.C. § 3143(b); Fed. App. R. 9(c), is that former President Trump did not *invoke* executive privilege as to the Select Committee's subpoena to Dr. Navarro. (*See* Opposition (Opp.) (Mar. 4, 2024) at 2 ("Navarro failed to establish any privilege invocation by former President Trump . . . ."); *Id.* at 13. ("[A]s the district court found, President Trump did not invoke executive privilege in response to that subpoena."); *Id.* at 15 ("Navarro failed to show that President Trump invoked privilege."); *Id.* at 17 ("Because President Trump did not invoke the privilege. . . ."); *Id.* at 19 ("The district court gave Navarro multiple opportunities to establish an executive-privilege defense, but he failed to do so.")).

In so arguing, the government appears to conflate the assertion of executive privilege with the district court's requirement that President Trump "properly" *invoke* executive privilege, the requirements of which the district court decided for the first time. Put differently, despite the district court finding that Dr. Navarro

2

"thought he invoked [executive privilege]" and that likely "[no]body would really dispute that Dr. Navarro thought he was supposed to invoke [executive privilege]", Hr'g Tr., at 119:18-23 (Aug. 28, 2023) (ECF No. 148), it nevertheless concluded President Trump's *invocation* of executive privilege as to the Select Committee subpoena to Dr. Navarro was not "proper," pursuant to its resolution of an "open question" concerning the legal standard for such a "proper" invocation. Thus, the district court's decision on the elements of a "proper" invocation of executive privilege was not only an open question, but itself a substantial question.[1] *See* Hr'g Tr., at 8:19-25, 9:1-2 (Aug. 30, 2023) (ECF No. 149) ("[T]he issue of whether a president must personally invoke the presidential communications privilege remains an open question. . . . So I want to just make the record clear that this is an open question." (internal quotation marks omitted)).

Whether this Court affirms, vacates, or otherwise alters the elements of a "proper" invocation of executive privilege set forth by the district court, that this issue of first impression is now before this Court warrants Dr. Navarro's release pending appeal.

---

[1] The government incorrectly suggests: "A defendant cannot be released unless the appeal raises a substantial question likely to result in reversal of all counts on which imprisonment is imposed." (Opp. at 19 (citing *United States v. Perholtz*, 836 F.2d 554 (D.C. Cir. 1988)). Dr. Navarro is eligible for release if the substantial issues he raises on appeal may also result in a new trial, not just reversal. Indeed, the only comparable individual to Dr. Navarro was released pending appeal, on the basis that his appeal presented a, "substantial question of law that is likely to result in reversal *or* an order for a new trial." Order, *United States v. Bannon*, No. 21-cr-670-CJN (D.D.C. Nov. 7, 2022) (ECF No. 168) (emphasis added).

To that end, it is disingenuous to suggest Dr. Navarro has raised only two issues that warrant release pending appeal. Dr. Navarro's challenge to the district court's determinations with respect to executive privilege and/or precluding Dr. Navarro from asserting executive privilege as a defense at trial are complicated issues rife with "close questions" or questions, "that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1988).

Executive Privilege

That the Presidential privilege is qualified, *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021), does not mean its presumptiveness is dependent upon any formal, "invocation." (*See* Opp. at 2 ("Navarro failed to establish any privilege invocation by former President Trump in response to the Select Committee subpoena.")). The government's *ipsit dixit* assertion to the contrary betrays the fundamental flaw in its rationale. Indeed, the government wholly fails to acknowledge this Court's conclusion in *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), by which this Court remains bound: "We recognize this great public interest, and agree with the District Court that *such conversations are presumptively privileged.*" *Id.* at 717 (emphasis added). Of note, one of the factors considered by this Court in concluding a grand jury could demonstrate sufficient need to pierce the privilege was President Nixon's public assertion that, "executive privilege will not be invoked." *Id.*, quoted in *In re Sealed Case (Espy)*, 121 F.3d 729, 741 (D.C. Cir.

4

1997). Nor is this Court's observation in *Espy*, 121 F.3d 729, to the contrary. (*See* Opp., at 14-15). Specifically, this Court held, "[w]e need not decide whether the privilege must be invoked by the President personally, *since the record indicates that President Clinton has done so here.*" *Id.* at 744 n.16 (emphasis added). Similarly, not before this Court was the question of whether any formal invocation is required to give rise to the application of the Presidential privilege, let alone what is required of a "proper" invocation.

To that end, the government blithely dismisses Dr. Navarro's argument that requiring a formal invocation by a former president risks vitiating the privilege entirely insofar as to hold otherwise would preclude a former president unexpectedly suffering from disability or death to assert the privilege and enable the recalcitrant or disgruntled to affirmatively waive the privilege unbeknownst to the president. The government does not reconcile this reality as against the elements of a "proper" invocation of privilege it seeks this Court to affirm because it can not.

The government also misconstrues Dr. Navarro's assertion that judicial imprimatur is a necessary predicate for a prosecution of a senior presidential advisor for contempt of congress with a requirement that Congress must seek permission of the Court to *issue* a subpoena. (*See* Opp., at 18 ("It would turn the separation of powers on its head to require judicial preclearance before Congress can investigate or the Executive can prosecute. . . Judicial preclearance is not a prerequisite to

5

prosecution for contempt of Congress." (internal citations omitted)). Rather, Dr. Navarro asserts that *only* the judicial branch can resolve the validity of a subpoena issued in contravention of an applicable privilege. *See Sirica*, 487 F.2d at 714-715 ("Whenever a privilege is asserted, even one expressed in the Constitution, such as the Speech and Debate privilege, it is the courts that determine the validity of the assertion and the scope of the privilege. . . . When such conflicts arise in justiciable cases, our constitutional system provides a means for resolving them – one Supreme Court.").

This is an important distinction because the prosecution of a senior presidential advisor for contempt of congress following an assertion of executive privilege contravenes the separation of powers doctrine. *See Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. 1 (July 15, 2014) ("Simas Opinion"). That Dr. Navarro is a former senior presidential advisor is a distinction without a difference. *See Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (Kavanaugh, J., respecting denial of application for stay) ("A former President must be able to successfully invoke the Presidential communications privilege for

communications that occurred during his Presidency, even if the current President does not support the privilege claim.").[2]

Accordingly, it is constitutionally impermissible to allow the judicial branch to resolve privilege questions *only after*, "raised as defenses in a criminal prosecution." *See United States v. U.S. House of Representatives*, 556 F. Supp. 150, 152 (D.D.C. 1983). To so hold, would require senior presidential advisors to risk imprisonment for asserting executive privilege despite being duty-bound to do so. *See Tobin v. United States*, 306 F.2d 270, 276 (D.C. Cir. 1962) ("Especially where the contest is between different governmental units, the representative of one unit in conflict with another should not have to risk jail to vindicate his constituency's rights. Moreover, to raise these issues in the context of a contempt case is to force the courts to decide many questions that are not really relevant to the underlying problem of accommodating the interest of two sovereigns." (quoting *United States v. Tobin*, 195

---

[2] This Court's opinion in *Trump v. Thompson* is not to the contrary. There, the Court was tasked with considering, "whether . . . a federal court can, at the former President's behest, override President Biden's decision not to invoke privilege" pursuant to applicable regulations promulgated under the PRA. 20 F. 4th at 31 ("[T]he Presidential Records Act has tasked the Archivist with promulgating regulations for the provision of notice to a former President when materials for which access had been restricted are sought by a court, the President, or Congress under 44 U.S.C. § 2205(2), and 'when the disclosure of particular documents may adversely affect any rights and privileges which the former President may have[.]'"). Accordingly, the district court's conclusion that an incumbent President can waive a former President's privilege is contrary to law and not one that has previously been briefed. *See Nixon v. GSA*, 433 U.S. 425, 439 (1977) ("We reject the argument that only an incumbent President may assert [the Presidential privilege of confidentiality] and hold that appellant, as former President, may also be heard to assert them.").

7

F. Supp. 588, 616-17 (D.D.C. 1961)); *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 213 n.34 (D.D.C. 2019) (the identification of sensitive information deemed subject to executive privilege, "gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf").

These and a plethora of Presidential privilege issues must be decided by this Court as part of Dr. Navarro's appeal. For present purposes, it matters only that the district court decided a substantial "open question" in a way that, by the district court's own admission, "hamstrung [Dr. Navarro's defense] dramatically." Hr'g Tr., at 291:17-18 (Sep. 5, 2023) (ECF No. 151). The resolution of this "open question," as well as the decision to preclude Dr. Navarro from relying on executive privilege as a defense at trial are "close questions" or questions, "that very well could be decided the other way," *Perholtz*, 836 F.2d at 555, and this Court should Order that Dr. Navarro be released pending his appeal.

*Licavoli*

The government's argument concerning the continued validity of *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), rests on the faulty and fragile assumption that this Court will continue to treat *Licavoli* as binding precedent despite the obvious damage such a conclusion would have on the doctrine of executive privilege as an important linchpin of the constitutional separation of powers doctrine.

Indeed, never before has a court confronted the question of whether, as applied to a senior presidential advisor, § 192 is constitutional. *See* Simas Opinion ("[S]ubjecting an immediate presidential adviser to Congress's subpoena power would threaten the President's autonomy and his ability to receive sound and candid advice."). And § 192 is an extension of Congress's inherent ability to enforce its powers. *See Statement of Stanley S. Harris, United States Attorney for the District of Columbia, Before the Committee on Public Works and Transportation of the House of Representatives* (June 16, 1983) ("Careful research was done on the legislative history of the contempt statute. That legislative history reflects that Congress felt obliged to transfer contempt adjudications to the Executive Branch in order to safeguard the constitutional rights of an accused."). Thus, it has been the position of the Department of Justice for more than a half-century that senior presidential advisors may not be subject to congressional subpoena. *Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House of Staff"* (Feb. 5, 1971). And when the U.S. House of Representatives sought to force the Department to prosecute a presidential advisor that refused to comply with an otherwise valid subpoena, the Department concluded any such prosecution would violate the separation of powers doctrine. *Prosecution for Contempt of*

*Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 134 (1984) ("Olson Opinion") ("[T]he separation of powers principles that underlie the doctrine of executive privilege also would preclude an application of the contempt of Congress statute to punish officials for aiding the President in asserting his constitutional privilege."). *See also id.* at 134 n.34 ("There is some doubt whether obeying the President's direct order to assert his constitutional claim of executive privilege would amount to a 'willful' violation of [§ 192]. Moreover, reliance on an explicit opinion of the Attorney General may negate the required *mens rea* even in the case of a statute without a willfulness requirement.").

*Licavoli*'s application here is especially problematic given the government was permitted, over objection, to present its own theory of Dr. Navarro's supposed *mens rea* to the jury. *See* Trial Tr. (Sept. 7, 2023), at 642:5-10 ("Navarro thinks he does not have to play by the rules. He had contempt for the Committee's need for information about the January 6th attack . . . the defendant chose defiance."). The evidentiary juxtaposition created by this application of *Licavoli* was the primary basis for Judge Nichols granting Stephen Bannon release pending appeal. Order, *United States v. Bannon*, No. 21-cr-670-CJN (D.D.C. Nov. 7, 2022) (ECF No. 168).

The government is quick to observe that Judge Nichols's finding was not binding on the trial court, this Court echoed the exact concerns raised by Judge

Nichols during Mr. Bannon's oral arguments. *See* Oral Argument, *United States v. Bannon*, No. 22-3086 (D.C. Cir. Nov. 9, 2023) (expressing skepticism that the government be permitted to preclude Mr. Bannon from "telling the jury his reasons" while also telling the jury, "he had no reasons."). Indeed, the D.C. Circuit considered this matter and ruled that once exposed to criminal prosecution for 2 U.S.C. 192, a defendant should be entitled to present constitutional claims as a defense. *Ansara v. Eastland*, 442 F.2d 751, 753-54 (D.C. Cir. 1971) (per curiam) (denying emergency injunctive relief quashing a congressional subpoena on the basis that, "[t]he ongoing legislative process provides opportunity for presentation of plaintiffs' constitutional contentions[,]" before acknowledging that, "the protections available within the legislative branch or elsewhere do not provide a conclusive determination for plaintiffs, as to their constitutional rights, *before they are exposed to the risk of criminal prosecution*." (emphasis added)).

Although dismissive of the same,[3] *Licavoli*'s application to this case presents several "close questions" or questions that, "could very well be decided the other way." *Perholtz*, 836 F.2d at 555.

---

[3] It bears noting that the government fails to substantively defend *Licavoli*, despite insisting that Dr. Navarro is not entitled to release pending appeal based on an expectation that this Court will consider his appeal *en banc.* (Opp. at 24.) Than *en banc* hearings are rare is immaterial – also rare are the prosecutions of senior presidential advisors like Dr. Navarro.

11

## CONCLUSION

For all of the foregoing, Appellant-Defendant Dr. Peter K. Navarro respectfully requests this Court Order that Dr. Navarro be released pending appeal.

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 32(a)(7)(B), that the foregoing brief complies with the type-volume limitation because it contains 2,573 words, and thus not more than 2,600 words, excluding those exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

/s/
Stanley E. Woodward Jr.

# CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on March 30, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/
Stanley E. Woodward Jr.