No. 24-3006

In the United States Court of Appeals for the District of Columbia Circuit

———————————

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

PETER K. NAVARRO,
*Appellant.*

———————————

On Appeal from the United States District
Court for the District of Columbia
(Crim. No. 1:22-cr-00200-APM)

———————————

**BRIEF OF *AMICUS CURIAE* THE OVERSIGHT PROJECT**

———————————

JEFFREY BOSSERT CLARK, SR.
JOSEPH E. SCHMITZ
The Oversight Project
2033 K Street, NW
Washington, D.C. 20006
Email:  jeff@itsyourgov.org
            joseph@itsyourgov.org
Phone: (202) 279-1396

# CERTIFICATION

The Oversight Project, in its capacity as a proposed *Amicus Curiae*, certifies as follows:

The Oversight Project has no parent entity, and no entity has a greater than 10 percent ownership interest in The Oversight Project. The Oversight Project is a 501(c)(4) nonprofit organization dedicated to preserving American freedom by ensuring government is and remains responsible, accountable, and transparent.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Amicus certifies that no party or their counsel participated in the drafting of this brief in whole or in part or funded this brief in whole or in part.

Pursuant to D.C. Circuit Rule 29, Amicus hereby submits this certificate.

**A. Parties and Amici**.

The parties and amici who have appeared before the Court are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

**B. Rulings Under Review.**

The district court ruling under review, according to the panel

opinion of July 21, 2026, is the district court's conclusion, after Peter K. Navaro, "moved to dismiss the indictment on the ground that President Trump had invoked executive privilege . . . that no such invocation of privilege had occurred and declined to dismiss the indictment. The district court also granted the government's motion *in limine* to preclude Dr. Navarro from arguing to the jury that he mistakenly believed he was not required to respond to the Select Committee's subpoena." The panel opinion is attached to Appellants' Petition for Rehearing En Banc.

**C. Related Cases.**

There are no related cases.

All parties consent to the filing of this brief.

# TABLE OF CONTENTS

**CERTIFICATION** ..................................................................................i

**TABLE OF CONTENTS** ............................................................ iii

**TABLE OF AUTHORITIES** ..........................................................iv

**INTEREST OF AMICUS CURIAE**.................................................v

**INTRODUCTION AND SUMMARY OF ARGUMENT**............................. 1

**ARGUMENT**................................................................................ 2

    I.   *Licavoli Cannot Be Reconciled with the Supreme Court's Settled Construction of "Willfully" in Decisions Both Predating and Postdating Licavoli.*............................................................... 2

    II.  Multiple Interpretive Canons Independently Confirm That "Willfully" in Section 192 Requires Knowledge of Unlawfulness—And Each Cuts Against *Licavoli.* ......................................................... 5

    III. The Court Should Also Grant Rehearing *En Banc* to Correct the Panel's Dismissal of Separation-of-Powers Issues of Exceptional Importance in Light of *Trump v. United States.* ...................................... 10

**CONCLUSION** ........................................................................ 12

**CERTIFICATE OF COMPLIANCE** ..............................................................

**CERTIFICATE OF SERVICE**................................................................

# TABLE OF AUTHORITIES

**CASES**

*Bryan v. United States*, 524 U.S. 184 (1998) .................................................. 7

*Cheek v. United States*, 498 U.S. 192 (1991) ................................................. 3

*Clark v. Martinez*, 543 U.S. 371 (2005) ........................................................ 9

*Cleveland v. United States*, 531 U.S. 12 (2000) ............................................ 9

*Collins v. Yellen*, 594 U.S. 220 (2021) .......................................................... 7

*Elonis v. United States*, 575 U.S. 723 (2015) ............................................. 4,8

*Lambert v. California*, 355 U.S. 225 (1957) ................................................. 10

*Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961) ....... 1–5, 7–10, 12–13

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ......................... 9

*Morissette v. United States*, 342 U.S. 246 (1952) ....................................... 6,8

*Murphy v. Waterfront Comm'n*, 378 U.S. 52 (1964) ...................................... 2

*NLRB v. Amax Coal Co.,* 453 U.S. 322 (1981) ............................................... 8

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ............................................... 4

*Rehaif v. United States*, 588 U.S. 225 (2019) ............................................... 4

*Ruan v. United States,* 597 U.S. 450 (2022) .................................................. 4

*Russello v. United States*, 464 U.S. 16 (1983) .......................................... 6,7,12

*Screws v. United States,* 325 U.S. 91 (1945) ................................................. 3

*Sinclair v. United States*, 279 U.S. 263 (1929) ........................................... 4,5

*Spies v. United States,* 317 U.S. 492 (1943) ................................................ 2,3

*Trump v. United States,* 603 U.S. 593 (2024) ........................................... 10,12

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ..................................................... 6

*United States v. Bishop,* 412 U.S. 346 (1973) ............................................... 3

*United States v. Gaudin*, 515 U.S. 506 (1995) .............................................. 5

*United States v. Heth,* 7 U.S. (3 Cranch) 399 (1806) ..................................... 9

*United States v. Murdock,* <u>290 U.S. 389</u> (1933) ..............................................2,3

*United States v. Santos,* <u>553 U.S. 507</u> (2008*)*...................................................... 9

## **STATUTE**

<u>2 U.S.C. § 192</u>.................................................................................................1, 6

\*      Authorities on which we chiefly rely

## INTEREST OF AMICUS CURIAE

The Oversight Project is a not-for-profit 501(c)(4) organization dedicated to preserving American freedom by ensuring government both is and remains responsible, accountable, and transparent.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case presents a question of exceptional importance that the *en banc* Court alone can resolve: whether a citizen may be branded a federal criminal for failing to comply with a congressional subpoena when he did not know, and had no reason to believe, that his conduct was unlawful. The panel answered that question in the affirmative, holding that a "good-faith mistaken belief" about the lawfulness of one's noncompliance "is no defense to the charges of willful default." In so holding, the panel applied this Court's decision in *Licavoli v. United States*, 294 F.2d 207, 209 (D.C. Cir. 1961), holding that "willfully" in 2 U.S.C. § 192 requires nothing more than "a deliberate intention to do the act."

*Licavoli* was wrong when it was decided and the intervening six decades of Supreme Court *mens rea* jurisprudence have left it indefensible. The Supreme Court has repeatedly held—both before and after *Licavoli*—that when Congress uses "willfully" to define a crime, it ordinarily requires proof that the defendant acted with knowledge his conduct was unlawful. *Licavoli* reads that requirement out of Section 192 entirely, criminalizing honest mistakes about legal obligations that are frequently novel, contested, and fraught with separation-of-powers questions of the first order.

## ARGUMENT

I.   *Licavoli* **Cannot Be Reconciled with the Supreme Court's Settled Construction of "Willfully" in Decisions Both Predating and Postdating** *Licavoli.*

The touchstone of statutory interpretation is the ordinary meaning Congress attached to the words it chose. For the adverb "willfully," the Supreme Court has supplied that meaning with unusual consistency—and it is not the meaning *Licavoli* adopted.

A.   *Pre-*Licavoli. The pre-*Licavoli* decisions already required an "evil" purpose. More than a generation before *Licavoli*, the Supreme Court explained that in the criminal law "willfully" "generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely." *United States v. Murdock*, 290 U.S. 389, 394 (1933) (cleaned up), *overruled in irrelevant part by Murphy v. Waterfront Comm'n*, 378 U.S. 52 (1964). When a statute makes it a crime to "willfully" fail to perform a legal duty, "the requirement that the omission in these instances must be willful, to be criminal, is persuasive that the same element is essential to the offense of failing to supply information [and thus] requires "bad faith or evil intent." *Id.* at 396, 398. The Court reaffirmed that understanding repeatedly. *Spies v. United States*, 317 U.S. 492, 497–98 (1943) (willful tax evasion requires "evil

motive"); *Screws v. United States*, <u>325 U.S. 91, 101</u> (1945) (plurality) (construing "willfully" to require "evil motive" to deprive a person of a known constitutional right).

Notably, these are the very cases *Licavoli* itself cited, <u>294 F.2d at 208-09</u> & n.11—*Murdock*, *Spies*, and *Screws*. *Licavoli* thus stands in open tension with the authorities it relied upon. It acknowledged that "willfully" might "immunize" a defendant "if evil motive or purpose were an element of the offense," but declared, without analysis of the statutory text or of *Murdock's* teaching, that "such motive or purpose is not an element." *Id*. at 209. That *ipse dixit* cannot survive *Murdock's* holding that "willfully" ordinarily supplies exactly such an element.

**B. Post-Licavoli.** The post-*Licavoli* decisions have hardened the protective scienter requirement into a settled rule. The modern cases hold that "willfully" in a criminal statute generally requires proof that the defendant acted with knowledge that his conduct was unlawful. In *Cheek v. United States*, <u>498 U.S. 192, 201</u> (1991), the Supreme Court clarified that "willfully" requires "the voluntary, intentional violation of a known legal duty," so that a defendant's good-faith misunderstanding of the law—even an unreasonable one—negates willfulness. *Accord United States v. Bishop*, <u>412 U.S. 346, 360-</u>

62 (1973). Going farther, *Ratzlaf v. United States*, 510 U.S. 135, 137, 149 (1994), required proof that a defendant charged with "willfully" structuring financial transactions knew the structuring itself was unlawful.

The Court has since emphasized "presumption in favor of scienter, by which we mean a presumption that criminal statutes require the degree of knowledge sufficient to make a person legally responsible for the consequences of his or her act or omission." *Rehaif v. United States*, 588 U.S. 225, 229 (2019) (cleaned up), and has read *mens rea* requirements to extend to "each of the statutory elements that criminalize otherwise innocent conduct." *Id. Accord Xiuliu Ruan v. United States*, 597 U.S. 450, 457–58 (2022); *Elonis v. United States*, 575 U.S. 723, 734 (2015) (requiring blameworthiness in mind). *Licavoli* points the opposite way: by holding that "all that is needed" is "a deliberate intention to do the act," it dispenses with any requirement that the defendant appreciate the wrongfulness of his conduct—the very requirement the Supreme Court has since made the presumptive default.

**C. Sinclair.** The panel's reliance on *Sinclair* does not save *Licavoli*. The panel, following *Licavoli*, leaned on *Sinclair v. United States*, 279 U.S. 263 (1929), for the proposition that a "mistaken view of the law is no defense" to a Section 192 charge. But the defendant there refused to answer questions—

conduct governed by the clause of Section 192 that does not contain the word "willfully"—and the Court held only that his mistaken belief about pertinency and the committee's jurisdiction did not excuse a refusal that was, by definition, knowing and deliberate. *Sinclair* said nothing about the distinct textual command Congress imposed for defaults. *Licavoli* erroneously erased that textual line, holding that "the elements of intent are the same in both cases." Moreover, *Sinclair*'s holding on the issue of pertinency was overruled in *United States v. Gaudin*, 515 U.S. 506, 520-23 (1995).

## II. Multiple Interpretive Canons Independently Confirm That "Willfully" In Section 192 Requires Knowledge Of Unlawfulness.

*Licavoli*'s core move was to treat (i) the "willfully makes default" and (ii) the "refuses to answer" clauses of Section 192 as demanding identical mental states, reasoning that a refusal to answer is "obviously in and of itself a willful act," 294 F.2d at 208, whereas a failure to respond to a subpoena "might be due to many causes other than deliberate intention," so that "willfully" was merely "a necessary adverb" to exclude innocent nonappearance, *id.* Several settled canons of construction demonstrate that this reading is wrong.

*A. The surplusage canon.* That reading renders the statute's most important word a nullity. If "willfully" does no more than exclude the person

prevented from appearing by illness or a missed train, it collapses into the ordinary *actus reus* requirement that the conduct be voluntary—a requirement the criminal law already supplies without any statutory adverb. *Morissette v. United States*, 342 U.S. 246, 250–52 (1952). Congress does not legislate in vain, and a reading that gives a statutory term real work to do is strongly preferred over one that makes it redundant. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). The knowledge-of-unlawfulness reading, by contrast, gives "willfully" the function the Supreme Court has assigned it elsewhere: separating the culpable defaulter who understands he is defying a lawful command from the citizen who honestly believes his nonappearance is legally justified.

***B. The meaningful-variation canon of* Russello.** Congress drafted two distinct offense clauses: it punishes a witness who, having been summoned, "willfully makes default," and it separately punishes a witness who, having appeared, "refuses to answer any question pertinent to the question under inquiry." 2 U.S.C. § 192. Congress placed the adverb "willfully" in the first clause and pointedly withheld it from the second. That deliberate variation within a single sentence triggers one of the Supreme Court's most firmly established rules: "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, <u>464 U.S. 16, 23</u> (1983); *accord Collins v. Yellen*, <u>594 U.S. 220, 248</u> (2021). The only faithful reading of that contrast is that Congress demanded more for a default than for a refusal, which—committed in the committee's presence—is inherently knowing and needs no such qualifier.

*Licavoli* confronted this very contrast and turned *Russello* on its head, expressly acknowledging that Congress had included "willfully" in the default clause and omitted it from the refusal clause, then declaring that Congress's decision makes no difference. A court may not presume that Congress inserted a materially significant word by accident, or that a word present in one clause and absent from an adjacent clause was mere ornament. This point is independently sufficient to warrant rehearing: it rests entirely on Section 192's own text and on a canon the Supreme Court applies as a matter of course.

***C. The consistent-usage canon.*** Identical words in the criminal law are presumed to carry a consistent meaning, and "willfully" is a term the Supreme Court has repeatedly defined to require awareness of unlawfulness. *See Bryan*, <u>524 U.S. at 195</u> ("the jury found that this petitioner knew that his conduct was unlawful"). There is no reason—and *Licavoli* offered none grounded in Section

192's text or history—to give "willfully" a uniquely diluted meaning in the contempt-of-Congress statute that it bears nowhere else. Congress legislates against the backdrop of the established legal meaning of the terms it employs, *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981), and that meaning is the demanding one. If anything, Congress's load in imposing contempt criminality on defendants in the Executive Branch should be heightened in light of the separation-of-powers concern plainly present.

**D. The presumption of mens rea.** The common law's "universal and persistent" insistence on "an evil-meaning mind with an evil-doing hand," *Morissette*, 342 U.S. at 251, generates a presumption that criminal statutes require a mental state "necessary to separate wrongful from innocent acts," *Elonis*, 575 U.S. at 736. That presumption applies with special force where, as here, the conduct criminalized—declining to comply with a subpoena on an asserted claim of privilege—is not inherently blameworthy, and its wrongfulness depends entirely on contested questions of law. *Licavoli* dispenses with that showing and thereby sweeps in the honest, if erroneous, invocation of legal rights.

**E. The rule of lenity.** At a minimum, Section 192 is ambiguous as to whether "willfully makes default" requires knowledge of unlawfulness. Where

such doubt persists after the ordinary tools of construction are exhausted, the rule of lenity requires the ambiguity to be resolved in the defendant's favor. *Cleveland v. United States*, 531 U.S. 12, 25 (2000); *accord United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality). *Licavoli* resolved every doubt against the accused—the opposite of what lenity commands.[*]

**F. The constitutional-avoidance canon.** Finally, the knowledge-of-unlawfulness reading is strongly favored because *Licavoli's* contrary reading raises serious constitutional concerns that a court should avoid if a fairly possible alternative construction exists. *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005). Two such concerns are acute here.

*First*, the separation of powers. Section 192's contempt power operates at the volatile intersection of Congress's investigative authority and the Executive's confidentiality interests. As the panel itself recognized, questions

---

[*] Congress wrote this statute, in part, to strengthen its own hand in disputes with the Executive Branch. For that reason, this Court should apply the *contra proferentum* canon as well to construe any ambiguities against the drafter. *United States v. Heth*, 7 U.S. (3 Cranch) 399, 413 (1806) (opinion of Patterson, J.) ("[T]he words of a statute, if dubious, ought . . . to be taken most strongly against the law makers."). And more recently, Justice Gorsuch relatedly noted: "*Chevron* deference sits in tension with many traditional legal presumptions and interpretive principles, representing nearly the inverse of the rules of lenity, *nemo iudex*, **and contra proferentem**." *Loper Bright Enterprises v. Maimondo*, 603 U.S. 369, 435 n.5 (2024) (Gorsuch, J., concurring) (emphasis added).

of executive privilege implicate "separation-of-powers lines" of the highest order. *See infra* Part III. *Licavoli's* strict-liability-for-legal-mistakes rule threatens to chill the legitimate assertion of privilege by every Executive Branch official, regardless of the President they serve.

***Second***, fair notice and due process. Punishing a citizen criminally for a reasonable, good-faith mistake about a novel and contested legal duty sits uneasily with the due process requirement of fair warning. *Lambert v. California*, 355 U.S. 225, 228–30 (1957). And overturning *Licavoli* can be done via a fairly-possible construction that avoids constitutional infirmity.

## III. The Court Should Grant Rehearing *En Banc* to Correct the Panel's Dismissal of Separation-Of-Powers Issues of Exceptional Importance in Light of *Trump v. United States.*

The panel's cursory rejection of Dr. Navarro's separation-of-powers arguments warrants rehearing in light of *Trump v. United States*, 603 U.S. 593 (2024).

In *Trump v. United States*, the Supreme Court held that "an Act of Congress—either a specific one targeted at the President or a generally applicable one—may not criminalize the President's actions within his exclusive constitutional power. Neither may the courts adjudicate a criminal prosecution that examines such Presidential actions." 603 U.S. at 594. The

latter scenario is what this case presents.

The district court below adjudicated "a criminal prosecution that examines . . . Presidential actions" in connection with Dr. Navarro's belief that President Trump, for whom he served at the apex level of White House commissioned officer as an Assistant to the President in the first Trump Administration, had invoked executive privilege as to the subject of a subpoena from the House Select Committee investigating the events of January 6, 2021. As Dr. Navarro explained: "President Trump had already publicly directed Navarro to claim executive privilege in response to a prior subpoena from another House Committee. When Navarro was served the subpoena by the Select Committee just months later, he believed President Trump had invoked executive privilege and prevented him from responding." Petition at 4 (internal citations omitted).

The panel summarily dismissed these exceptionally important separation-of-powers issues: "The separation-of-powers problem that Dr. Navarro asserts depends on there being a clash between the Executive's invocation of privilege and Congress's enforcement of its subpoena for the assertedly privileged material. No such clash occurred here .... [T]he district court did not clearly err in finding as a matter of fact that neither President

Trump nor a designee invoked executive privilege." *United States v. Navarro,* --- F.4th ---, 2026 WL 2093909, at \*8 (D.C. Cir. July 21, 2026).

The exceptional importance of these issues warrants rehearing *en banc.* As the Supreme Court explained in *Trump v. United States*: "Because the President's need for complete candor and objectivity from advisers calls for great deference from the courts, we held that a presumptive privilege protects Presidential communications . . . . We thus deemed it 'fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." 603 U.S. at 595 (cleaned up).

To correct that cursory dismissal, this Court should order *en banc.*

## CONCLUSION

Each of the foregoing errors is independently sufficient to justify rehearing, and together they are overwhelming. **(1)** *Licavoli* conflicts with controlling Supreme Court authority decided both before and after it; **(2)** it disregards Congress's deliberate textual choice to include "willfully" in one clause of Section 192 while omitting it from the other, in violation of *Russello*; and it disregards no fewer than five other settled canons of construction. **(3)** Finally, *Licavoli* must be reconsidered as applied to Dr. Navarro in the wake of the landmark *Trump v. United States* ruling.

Because *Licavoli* binds every panel of this Court, only the full Court can correct it. The full Court should overrule *Licavoli* and hold that a conviction under Section 192 for "willfully" making default requires proof that the defendant knew his noncompliance was unlawful.

Dated: August 11, 2026          Respectfully submitted,

*/s/ Jeffrey Bossert Clark, Sr.*

JEFFREY BOSSERT CLARK, SR.
JOSEPH E. SCHMITZ
The Oversight Project
2033 K Street, NW
Washington, D.C.  20006
Email:  jeff@itsyourgov.org
         joseph@itsyourgov.org
Phone: (202) 279-1396

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the portions of the brief exempted by Fed. R. App. P. 32(f), this document contains 2,598 words.

2.      This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook typeface.

*/s/ Joseph E. Schmitz*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on this 11th day of August 2026, I caused the foregoing brief to be filed using this Court's Appellate CM/ECF system, which effected service on all parties.

*/s/ Joseph E. Schmitz*